Henry Hammer, Plaintiff-Appellee, v. Harry A. Slive and Albert Lewis, Co-Partners Doing Business as Rockford Iron & Metal Company, Defendants-Appellants.

**Gen. No. 11,580.**

Second District, First Division.

May 29, 1962.

Rehearing denied June 19, 1962.

Wilbur E. Johnson, John E. Sype, of Rockford, for appellants.

Miller, Thomas, Hickey & Collins, of Rockford, for appellee.

SMITH, P. J.

On the first visit here of this case we reversed and remanded it for a new trial. Henry Hammer v. Harry A. Slive, et al., 27 Ill App2d 196, 169 NE2d 400. The first trial on remandment resulted in a hung jury. The second trial resulted in a jury verdict of $68,700.50 for the plaintiff. Post-trial motions were denied and this appeal followed.

■ ■ Appellants insist that a change in pleadings, the dismissal of a party defendant, variance in testimony and additional evidence offered, make the case

res nova, and therefore, we must reexamine it in toto. With this contention we cannot agree. The retinting of the face leaves the original features substantially unchanged. Where the evidence on a subsequent appeal is the same as on the first or prior appeal, or substantially so, the adjudications of such first or prior appeal become the law of the case. 3 Ill L and P, Appeal and Error, Sec 881, p 138, 3 Am Jur, Appeal and Error, Sec 1000, p 553, Bartels v. McGarvey, 331 Ill App 275, 73 NE2d 123. They were binding on the trial court on the second and third trial, and are binding on this court on this second appeal. The door is thus judicially closed to a reconsideration of our previous conclusions that the issues of the plaintiff's due care and the defendant's negligence were properly submitted to the jury. The dismissal of the suit against the defendant Higgins, an employee of the defendant partners, changed the evidentiary picture not one iota. The amendment of the pleadings by the defendant raised no new basic issues. Admittedly the evidence is not identical. Semantical identity is beyond the capacity of human agencies. It is only required that it be substantially so. The defendants' pleas of assumption of risk, and the claim that the plaintiff was in charge of the operation, were each determined adversely to the appellants on the first appeal. There being no substantial additional testimony on these issues, our prior adjudications have become the law of the case. The case now presented as to these matters is not res nova, but is the same mannikin, in the same costume, with a few inconsequential accessories added.

Even with the perimeter of our examination thus circumscribed, we still may appropriately examine the medical testimony as it relates to carbon monoxide gas as the proximate cause of the injuries, the statements of the plaintiff and the nurse as they relate to res

450

gestae, the refusal of the trial court to admit certain photographs and the refusal of the court to admit evidence of certain experiments conducted after the remandment.

Over the objections of the defendant the court permitted the plaintiff and the company nurse to testify that the plaintiff came to the nurse and said "I've had too much carbon monoxide." This testimony was admitted as a part of the res gestae and its admission is assigned as error. Defendant Slive testified that after the loading of the truck was completed, the plaintiff went into the shed and, after "a couple of minutes," he himself went in and saw the plaintiff with his head on the desk, and heard him complain of an "awful headache"—"We were there a couple of minutes and another man [unidentified] said, 'You had better get first aid, so he went.'"

"The test of admissibility of evidence as a part of the res gestae is whether the act, declaration or exclamation is so intimately interwoven or connected with the principal fact or event which it characterizes as to be regarded as a part of the transaction itself, and whether it clearly negates any premeditation or purpose to manufacture testimony. Spontaneity is essential . . . ." 18 Ill L and P 202, Evidence, Sec 71. Patently such a rule must be administered with care to avoid the admission of self-serving declarations or other evidence of doubtful reliability. Here the statement was made to the company nurse, and by her incorporated into the plaintiff's permanent company medical record. It was made by a man obviously quite ill. It was made to one from whom he expected first aid. It was made in a matter of minutes after the occurrence. It was made under circumstances which negate any thought of claim or litigation, any lack of spontaneity, any premeditation or any attempt to

451

manufacture testimony. It appears to be "the unreflecting and sincere expression of the speaker's actual impressions and belief." Carroll v. Guffey, 20 Ill App2d 470 at 475, 156 NE2d 267 at 270.

██ Furthermore, Plaintiff's Exhibit No. 5, his medical employment record kept by his employer, contains this language: "Stated carbon monoxide fumes, truck was in semiopen building." Plaintiff's Exhibit No. 2, his hospital record shows both the admitting and the final diagnosis as "carbon monoxide poisoning." These two exhibits were admitted into evidence without objection. Having made no objection to them —and they were admitted without restriction—the defendant cannot now be heard to say that they were not evidence of the facts therein stated. Morris v. Central West Cas. Co., 351 Ill 40, 183 NE 595, nor can they now be impeached by the defendant. Cuneo Press Co. v. Industrial Commission, 341 Ill 569, 173 NE 470. We have already observed that the defendant Slive testified that plaintiff complained of an "awful headache." Two of defendants' own doctors referred to headache as an objective symptom of carbon monoxide intoxication and one stated that the onset "is usually sudden." In this state of the record, we find it difficult to say—indeed we cannot say— that the trial court exceeded the reasonable degree of latitude accorded to it in admitting these oral statements as part of the res gestae, particularly when the substance of the statements is in the record, without objection, and in writing. Kalschinski v. Illinois Bankers Life Assur. Co., 311 Ill App 181, 35 NE2d 705; Johnson v. Swords Co., 286 Ill App 377, 3 NE2d 705.

██ The substantial disagreement in the medical testimony was noted in our first opinion. Two additional experts testified on this trial for the defendants, and attributed plaintiff's injuries to a cerebral accident unrelated to carbon monoxide. Two local doc-

452

tors testified for the plaintiff on the first trial and on this one, that there was a causal connection between the plaintiff's present sense of ill being and the carbon monoxide. Thus two juries have made their choice between the wheat and the chaff. That choice has twice been approved by the trial judge. There is nothing in this record to suggest that that choice is not well founded, except that the doctors disagree on the question of causation. We cannot, and should not, disturb the verdict of a jury on conflicting testimony unless conclusions opposite to those reached by the jury are clearly evident. Rude v. Siebert, 22 Ill App2d 477, 161 NE2d 39. The medical testimony before us is not of that character.

Defendants' Exhibits Nos. 5, 6, 7, 8, 10 and 11 were admitted and received into evidence on the first trial, but were objected to on this trial as "posed" photography and their admission was denied. These photographs showed the building, the truck in place, the scales at the rear of the truck and views of the steel yard. The exact location of the truck in the building, and the location of the scales in relation to the tail-gate were each in dispute. The pictures offered were taken some time after the occurrence, with the physical objects placed as some of defendants' witnesses said they were at the time of the occurrence. ▮▮▮▮ Visual aids are properly and appropriately used to illustrate or explain the testimony of witnesses. Here the location of movable objects were in dispute. No universal format can be laid down for the admission of photographs. These were offered without restriction or limitation. While they might appropriately have been admitted with proper restrictions, they were not so offered. In view of the other photographs in the record and the oral testimony of the witnesses, we cannot say that the trial court abused its discretion in refusing them admittance. Unless

453

photographs correctly portray what they purport to portray, their probative value is suspect.

■ ■ After our remandment and pursuant to court order, the defendants conducted some experiments by placing the truck in place, undertaking to simulate the conditions existing at the time of the occurrence and sampling the air for carbon monoxide gas. Dr. Wilson, a qualified chemist and industrial hygienist, was offered as a witness to prove that tests were made on January 5, 1961, and that the samplings taken were negative as to carbon monoxide. The qualifications of the expert and the instruments used by him are not suspect and are not challenged. The simulation of conditions is challenged. It does appear that the conditions existing were simulated to the fullest extent possible, under the circumstances, which contained many variables. But this alone does not establish admissibility. For the experiment a new muffler and tail-pipe had been installed on the truck, and air currents at the airport, wind velocity, barometric pressure, etc., even at that point, as well as temperature, varied somewhat, and even if identical there, it is a matter of common knowledge that they would not necessarily be the same at the scene of the accident. The rule in Illinois appears to be that experiments are incompetent unless the essential conditions of the experiment are shown to be the same as those existing at the time of the accident. Handley v. Erb, 314 Ill App 207, 41 NE2d 222; Downing v. Metropolitan Life Ins. Co., 314 Ill App 222, 41 NE2d 297. In Cowan v. Chicago, M., St. P. & P. R. R., 55 Wash2d 615, 349 P2d 218 (1960), plaintiff sued because of toxic effects of a chemical bat repellant used by the defendant in the attic of a building wherein plaintiff had a room. An industrial hygienist testified that humidity, air currents, temperature, etc., would have only minimal effects on the rate of evapo-

454

ration of the repellant. The expert conceded he did not know the conditions in the attic at the time of the occurrence. The trial court instructed the jury to disregard his testimony. The reviewing court held that there was no abuse of discretion in so doing. Two trial judges have held that the conditions here contain too many variables to lend much probity to the experiment in question. Considering the volatile nature of carbon monoxide gas and the variables shown in this record, we are unable to say that the conditions on the day of the test are sufficiently similar to those on the day of the occurrence to furnish any safe guide for jury determination.

■ Lastly, the defendants suggest that judicial discretion is abused when invariably exercised in favor of the same party. Aside from the jocular atmosphere of the coffee lounge, we know of no place where the exercise of sound judicial discretion of the trial judge is grounded upon an equal division between the parties. Each such exercise is independent from any other and is weighed by its own set of facts.

We are of the opinion that each party has had a fair trial of the issues in a difficult case and that the judgment of the circuit court of Winnebago County should be, and it is, hereby affirmed.

Affirmed.

McNEAL, P. J. and DOVE, J., concur.