LINDSAY STALLMAN, by her Father and Next Friend, Mark Stallman, Plaintiff-Appellant, v. CLARENCE R. YOUNGQUIST, Defendant (Bari Stallman, Defendant-Appellee).

First District (4th Division)  No. 83—1987

Opinion filed December 20, 1984.

ROMITI, J., dissenting.

George B. Collins and Sandra L. Hertzberg, both of Collins & Amos, of Chicago, for appellant.

Jacobs, Williams & Montgomery, of Chicago (Barry L. Kroll, Lawrence K. Rynning, and Lloyd E. Williams, Jr., of counsel), for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Lindsay Stallman, by her father and next friend, Mark Stallman, appeals an order of the trial court dismissing count II of her second amended complaint. She raises the following issues for review: (1) whether the trial court's dismissal of count II of her complaint was proper and (2) whether her cause of action in negligence (count II) should be barred by application of the parent-child tort immunity rule.

We reverse and remand.

On April 27, 1983, plaintiff filed her second amended complaint alleging that she is a minor and was born on January 25, 1982. On October 7, 1981, at 4:46 p.m., her mother, Bari Stallman, was involved in an automobile collision with defendant, Clarence Youngquist. In count I, plaintiff alleged that Youngquist was negligent in driving his car and that as a result of the accident she suffered serious injuries

which became apparent at her birth. She asked for $25,000 in damages.

In count II, plaintiff alleged that her mother was negligent; that at the time of the accident, she (plaintiff) was not a person because her mother could have had a legal abortion; and that her (plaintiff's) injuries were outside the family relationship, since she was not yet part of a family. Plaintiff asked damages of $25,000. In count III, plaintiff alleged that her mother's acts were wilful and wanton, and she asked for damages of $25,000.

Defendant, Bari Stallman, moved to dismiss count II on a claim of parent-child tort immunity. On August 4, 1983, the trial court dismissed count II with prejudice and found that parent-child tort immunity applied because plaintiff was a member of the Stallman family at the time of the accident. Plaintiff appeals.

Plaintiff argues that Illinois courts have created certain exceptions to the judicially created parent-child tort immunity doctrine. For example, the doctrine has not been applied where the negligence complained of arose outside the family relationship and remained unconnected with family purposes and objectives. (*Cummings v. Jackson* (1978), 57 Ill. App. 3d 68, 372 N.E.2d 1127.) Where the doctrine has been applied, the negligence was directly connected to the family. The doctrine has never been applied in a situation similar to the instant case. Plaintiff argues that it is a total legal fiction to hold that when she was a five-month fetus, she was engaged in a family activity. She was incapable of engaging in any activity directly connected with a family purpose or objective. Plaintiff insists that she met her burden of pleading facts sufficient to withstand application of the parent-child tort immunity rule. Plaintiff concludes that the trial court improperly held that she was a member of the Stallman family for purposes of the immunity rule.

Plaintiff also contends that a nonviable fetus is not a legal person. Defendant Stallman could have legally aborted plaintiff at the time of the accident.

Defendant Stallman responds that no Illinois decision has recognized an exception to the parent-child immunity doctrine where a child happens to be *in utero* at the time of the mother's alleged negligence. She cites *Hogan v. Hogan* (1982), 106 Ill. App. 3d 104, 435 N.E.2d 770, *Eisele v. Tenuta* (1980), 83 Ill. App. 3d 799, 404 N.E.2d 349, and *Johnson v. Myers* (1972), 2 Ill. App. 3d 844, 277 N.E.2d 778, in support of the view that the operation of an automobile with a family member as a passenger is within the scope of the family relationship. Defendant also cites *Renslow v. Mennonite Hospital* (1977), 67

Ill. 2d 348, 367 N.E.2d 1250, for the recently adopted rule that a child born with injuries sustained while it was a developing fetus may maintain an action for damages.

Defendant Stallman claims that public policy is clear in recognizing a fetus to have the status of a person within the womb from the time of conception at least with respect to tort actions by or on behalf of the fetus subsequently born alive. Defendant contends that it is unreasonable to believe that a fetus is not a child of her mother as she develops in the womb, and defendant concludes that the driving of an automobile to a restaurant (as she did in the instant case) is within the scope of the family relationship with plaintiff in the status of passenger in her mother's car.

Defendant Stallman argues that recognition of the parent-child tort immunity doctrine is supported by the public policy of promoting family harmony and preventing intrafamily strife. Defendant responds to plaintiff's other arguments, stating that any right she may have had to procure an abortion at the time of the accident is irrelevant and that a family relationship exists between a fetus *in utero* and her mother.

Next, plaintiff argues that the parent-child tort immunity doctrine should not be applied to the instant case. Recently Illinois courts have examined and reinterpreted interspousal and parent-child tort immunity in contribution and uninsured motorist cases. Plaintiff claims such interpretations may indicate a growing desire to abandon those doctrines. The immunity doctrine has been abandoned in a majority of jurisdictions because it no longer serves the purpose for which it was intended and because the results of its application are uneven and unjust. The doctrine denies a party access to the court solely because of his or her relationship to another party. It no longer serves its purpose of preserving family harmony and ensuring justice where it disqualifies an entire class of minors.

Plaintiff further argues that the doctrine is hollow where defendant parent has insurance coverage such that the sought-after litigation is not between the child and parent, but between the child and the parent's insurance company. The trial judge and jury are capable of considering the possibility of collusion between parent and child. Finally, plaintiff argues that since the doctrine is court-made, the court has a duty to criticize, re-examine and modify it when such action is justified by public policy. It is unjust that acts considered tortious between strangers should be privileged because of the relationship between plaintiff and defendant.

Defendant Stallman responds that as a matter of public policy a

child should not be permitted to sue her mother for prenatal injuries arising out of conduct which occurs during pregnancy. A mother should not be subject to suit because of involvement in legitimate activities. Such judicial involvement would not promote parenthood. Additionally, defendant claims that a mother cannot commit a tort against her child *in utero* because she cannot commit a tort against herself. She and the child are in a unitary relationship. Defendant contends that for the court to rule that the immunity doctrine did not apply would result in burdensome potential liability on expectant mothers. Finally, defendant states that the possibility of liability insurance is not a basis for making an exception to the parent-child tort immunity doctrine.

We disagree with plaintiff's contention that she was not a member of the family at the time the alleged negligence occurred. In our opinion, it is illogical for plaintiff to argue that as a nonviable fetus, she was not a legal person and therefore not a member of the Stallman family, and yet sue her mother for injuries she sustained when she was a nonviable fetus. At the time of her prenatal injuries, plaintiff was a legal person for purposes of maintaining, after her birth, a lawsuit (see *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 367 N.E.2d 1250), and she was also a member of the Stallman family.

We do agree with plaintiff, however, that the parent-child tort immunity doctrine should not be applied to this case so as to defeat plaintiff's cause of action for negligence against her mother.

Illinois first recognized the doctrine of parent-child tort immunity in *Foley v. Foley* (1895), 61 Ill. App. 577, 580, in which the appellate court stated that a child cannot maintain an action for damages against a parent on account of maltreatment. This rule was based on the public policy that a child shall not contest with the parent the parent's right to govern the child. (61 Ill. App. 577, 579.) For an analysis of the parent-child tort immunity doctrine, see Annot., 6 A.L.R.4th 1066 (1981). For a scholarly analysis of the issue raised in this appeal and for historical background, see Beal, *"Can I Sue Mommy?" An Analysis of a Woman's Tort Liability For Prenatal Injuries to Her Child Born Alive*, 21 San Diego L. Rev. 325 (1984).

A trend away from parent-child tort immunity has developed in recent years. The Wisconsin Supreme Court was the first to abolish the general rule of nonliability in 1963, while recognizing a general duty of a parent to a child and while retaining two limited immunity exceptions. (See *Goller v. White* (1963), 20 Wis. 2d 402, 122 N.W.2d 193.) In Illinois, the immunity doctrine was eroded by *Schenk v. Schenk* (1968), 100 Ill. App. 2d 199, 241 N.E.2d 12.

In *Schenk*, a father sued his minor daughter for injuries sustained when she negligently drove into him. The trial court sustained a motion to dismiss the father's complaint. The appellate court defined the determinative issue as whether in a parent-child relationship the immunity rule should bar recovery for conduct wholly unrelated to the objectives or purposes of the family itself. (100 Ill. App. 2d 199, 204.) The appellate court stated as follows:

> "[S]ome jurisdictions have held that the immunity rule has not been applied to property rights, contract rights, an emancipated child, wrongful death actions, suits between brothers and sisters, a stepfather, an adoptive parent, or a grandparent, to cases where the child is injured in the course of a business rather than a personal activity, and in suits involving willful, wanton, intentional or criminal conduct. If harmony and unity in the family is the public policy protecting the rule, it would seem to be present in these areas. \*\*\*. From these observations, it is easy to conclude that the justification for the rule based on harmony, cooperation and family affection and its preservation is an excuse rather than a solid foundation for the rule. It would thus follow that since the reason for the rule is nonexistent, the rule itself should be interred. We do not reach this result.
>
> \*\*\* [T]here are no impelling reasons for eroding or emasculating the family immunity rule for conduct of either parent or child arising out of the family relationship and directly connected with the family purposes and objectives in those cases where it may be said that the carelessness, inadvertence or negligence is but the product of the hazards incident to interfamily living and common to every family. In such instances the immunity doctrine is neither unjust, unreasonable nor without a sound and solid foundation. \*\*\*.
>
> The statement of these principles, however, does not preclude a holding that the complaint in the case at bar states a cause of action. As stated in Cooley on Torts, 2nd ed, p 276: 'Where the child is injured in his own property or person redress has no necessary connection with the family relation.' The facts here charged occurred during the exercise by both the father and the child of his individual rights on the public streets and with no direct connection with the family relationship. It seems thus clear to us that reason and justice require that the immunity rule should not stand as an insuperable bar to redress for injuries occasioned by the exercise of those

rights." (*Schenk v. Schenk* (1968), 100 Ill. App. 2d 199, 204-06.) In our opinion, plaintiff should be given the opportunity to prove whether defendant Stallman's act of driving to a restaurant was not an act arising out of the family relationship and directly connected with family purposes and objectives.

Relying on *Schenk*, Illinois courts have tended to restrict rather than expand the application of the parent-child tort immunity doctrine. The doctrine has barred a cause of action where a minor alleged that his father negligently permitted a loose stairway rug to be used in the home (*Cosmopolitan National Bank v. Heap* (1970), 128 Ill. App. 2d 165, 262 N.E.2d 826); where a minor injured by his father's negligent operation of a car did not allege that his injury arose as a result of activity outside the family relationship (*Illinois National Bank & Trust Co. v. Turner* (1980), 83 Ill. App. 3d 234, 403 N.E.2d 1256); where a parent was injured in a car her son was driving to a college campus (*Eisele v. Tenuta* (1980), 83 Ill. App. 3d 799, 404 N.E.2d 349); where a minor was injured while her mother was driving her home from a piano lesson (*Hogan v. Hogan* (1982), 106 Ill. App. 3d 104, 435 N.E.2d 770); and where a minor was injured in a car driven by her father after he had picked her up from work (*Wilkosz v. Wilkosz* (1984), 124 Ill. App. 3d 904, 464 N.E.2d 1232).

Illinois courts have held that the immunity doctrine was not a bar to a cause of action where minor children sued a deceased parent (*Johnson v. Myers* (1972), 2 Ill. App. 3d 844, 277 N.E.2d 778); where a minor sued his grandparents (*Gulledge v. Gulledge* (1977), 51 Ill. App. 3d 972, 367 N.E.2d 429; *Busillo v. Hetzel* (1978), 58 Ill. App. 3d 682, 374 N.E.2d 1090); where a minor alleged that she was injured as a result of her parent's failure to trim trees which was a violation of a city ordinance (*Cummings v. Jackson* (1978), 57 Ill. App. 3d 68, 372 N.E.2d 1127); and where a third party sought contribution from the parents of an injured minor alleging that their negligence contributed to the minor's injuries (*Larson v. Buschkamp* (1982), 105 Ill. App. 3d 965, 435 N.E.2d 221; *Moon v. Thompson* (1984), 127 Ill. App. 3d 657, 469 N.E.2d 365). Recently, the appellate court has ruled that a party may maintain an action for contribution against parents of an injured minor child based on negligent supervision of the child. (*Hartigan v. Beery* (1984), 128 Ill. App. 3d 195.) Additionally, in *Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 178-79, 347 N.E.2d 705, 712, three dissenting justices noted that our supreme court has never decided the question of whether a parent is liable for injuries to his child absent wilful and wanton misconduct.

The parent-child tort immunity doctrine was created by the courts

(*Foley v. Foley* (1895), 61 Ill. App. 577), and the court is free to modify any doctrine which it creates (*Larson v. Buschkamp* (1982), 105 Ill. App. 3d 965, 967, 435 N.E.2d 221, 223). In *Larson*, the court stated that "[w]hile *** in Illinois the courts continue generally to give vitality to the parent-child tort immunity doctrine as a consequence of public policy considerations favoring the promotion of family harmony and the prevention of intrafamily litigation and strife [citation], the rule has been modified where the purpose of the doctrine will not be served." 105 Ill. App. 3d 965, 969.

Defendant Stallman argues that as a matter of public policy a child should not be permitted to sue her mother for prenatal injuries. Such liability is potentially burdensome and would not promote parenthood. As noted above, Illinois courts in several cases have already restricted the application of the immunity doctrine and sanctioned direct parent-child tort suits in certain circumstances. (*Larson v. Buschkamp* (1982), 105 Ill. App. 3d 965, 970.) Other jurisdictions which have abolished the parent-child tort immunity doctrine have met the family disruption argument by reasoning that the injury itself and not the consequent suit is the factor which may upset the family unit. The widespread use of liability insurance mitigates against the possibility that such suits disrupt the domestic peace or deplete the family's financial resources. (*Larson v. Buschkamp* (1982), 105 Ill. App. 3d 965, 970.) In our opinion, the right of the child to be compensated for her injuries is not outweighed by considerations of public policy raised by defendant.

In conclusion, we hold that the trial court erred in dismissing count II of plaintiff's complaint, which stated a cause of action in negligence against her mother.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded.

Reversed and remanded.

LINN, P.J., concurs.

JUSTICE ROMITI, dissenting:

For two reasons, I respectfully dissent. First, I am unable to discern how the parent-child tort immunity doctrine does not apply to the facts of the instant case. Parental immunity is founded on the firm principle that the law should not intrude into parent-child interactions which occur in the context of and arise from the family relationship. (See, *e.g., Hogan v. Hogan* (1982), 106 Ill. App. 3d 104, 435

N.E.2d 770; *Illinois National Bank & Trust Co. v. Turner* (1980), 83 Ill. App. 3d 234, 403 N.E.2d 1256.) As the Illinois Supreme Court recently observed, "it is clear that public policy demands the development and the preservation of family relations. Exemplary of that policy in the tort context is the rule prohibiting suits by children against their parents for negligence. [Citations.]" (*Cockrum v. Baumgartner* (1983), 95 Ill. 2d 193, 201, 447 N.E.2d 385.) The doctrine has long been applied to a wide range of encounters between parents and their children of a variety of ages, of which the more common has been the family excursion in the family car. (*E.g., Eisele v. Tenuta* (1980), 83 Ill. App. 3d 799, 404 N.E.2d 349; *Johnson v. Myers* (1972), 2 Ill. App. 3d 844, 277 N.E.2d 778.) I fail to perceive the distinction between these cases, where the doctrine was applied, and the facts of the case at bar, where the doctrine is not applied. *Schenck v. Schenck* (1968), 100 Ill. App. 2d 199, 241 N.E.2d 12, relied upon by the majority is, in my opinion, distinguishable from the instant case, since there are no facts here to show that the accident occurred "during the exercise by both the [mother] and the child of [her] individual rights on the public streets and with no direct connection to the family relationship." (100 Ill. App. 2d 199, 206.) Moreover, I am unable to discern how the plaintiff here will be able to prove upon remand that a mother's driving her child (or children) to eat dinner at a restaurant does not constitute a "family purpose."

Second, by declining to apply the doctrine of parental immunity to the facts of the instant case, the majority decision may result in more than a simple refusal to apply the doctrine to a particular fact situation. Although it has repeatedly been said that parental immunity "is a court-formulated rule which is not based on an absence of *duty* but upon immunity from suit" (*Johnson v. Myers* (1972), 2 Ill. App. 3d 844, 845, 277 N.E.2d 778), refusal to apply the doctrine may nonetheless lead to recognition of new causes of action. In the context of the case at bar, if a mother is no longer immune from liability to her child[1] for negligent acts causing prenatal injuries to that child, it is but a short step to impose a specific or particular duty upon the

---

[1] I note parenthetically that the mother in the case at bar may not be immune from liability to the driver of the other automobile also involved in the accident which allegedly caused the child's injuries. The accident here occurred after March 1, 1978, and thus falls within the purview of the Contribution Among Joint Tortfeasors Act. (Ill. Rev. Stat. 1983, ch. 70, par. 301.) Therefore, the driver of the other automobile, also a defendant in this action, may maintain a suit in contribution against the mother, alleging that her conduct was also a proximate cause of the child's injury. See *Larson v. Buschkamp* (1982), 105 Ill. App. 3d 965, 435 N.E.2d 221.

mother regarding the care of an unborn child. This, in turn, would require a determination of the scope of her duty to that child, when the duty arises (at conception, upon viability, upon birth), and how breach of that duty is to be determined. The abolition of the doctrine of parental immunity in other jurisdictions, even in limited circumstances, has created a host of unresolved issues and conflicting results; by far the knottiest of such questions has been a mother's liability for prenatal injury to her child. (See Beal, *"Can I Sue Mommy?" An Analysis of a Woman's Tort Liability for Prenatal Injuries to Her Child Born Alive,* 21 San Diego L. Rev. 325 (1984).) In my view, if the parent-child tort immunity doctrine is to be discarded or even further restricted as it applies to actions directly between the parent and child, it should be done forthrightly and not by a continuous chipping away at the doctrine; then the responsibilities and duties of parents to their children and to third parties could be established according to a comprehensive framework, of which an integral part would be a mother's liability for prenatal injuries.