LINDSAY STALLMAN, by her Father and Next Friend, Mark Stallman, Plaintiff-Appellant, v. CLARENCE R. YOUNGQUIST *et al.*, Defendants-Appellees.

First District (4th Division)   No. 86—0315

Opinion filed February 11, 1987.

George B. Collins and Christopher Bargione, both of Collins & Uscian, of Chicago, for appellant.

Williams & Montgomery, Ltd., of Chicago (Barry L. Kroll, Timothy V. Hoffman, John D. Daniels, and Lloyd E. Williams, Jr., of counsel), for appellees.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Lindsay Stallman, by her father and next friend, Mark Stallman, brought an action in the circuit court of Cook County against defendants, Clarence Youngquist and Bari Stallman. Bari is plaintiff's mother. Plaintiff sought damages for prenatal injuries that she allegedly sustained in an automobile collision that defendants caused. The trial court granted Bari's motion for summary judgment on Count II of the three-count complaint. Plaintiff now appeals, contending that the trial court erred in granting summary judgment for Bari.

We reverse and remand.

Plaintiff's second amended complaint alleged that she was born on January 25, 1982. On October 7, 1981, her mother, Bari, was involved in an automobile collision with Youngquist. In count I, plaintiff alleged that Youngquist was negligent in driving his automobile and that as a result of his negligence she suffered, *in utero*, serious injuries that became apparent at her birth. She sought $25,000 in damages.

In count II, plaintiff alleged that Bari was negligent in driving her automobile. Plaintiff further alleged that at the time of the accident she was not a person; therefore, she was not a member of Bari's family and her injuries were outside of the family relationship. Plaintiff sought $25,000 in damages. In count III, plaintiff alleged that Bari's acts were wilful and wanton.

Bari moved to dismiss count II, pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—615), invoking the parent-child tort immunity doctrine. On August 4, 1983, the trial court dismissed count II with prejudice, finding that plaintiff was a member of Bari's family at the time of the accident and, therefore, that the parent-child tort immunity rule applied.

Plaintiff then appealed the trial court's dismissal of count II of her second amended complaint. In *Stallman v. Youngquist* (1984), 129 Ill. App. 3d 859, 473 N.E.2d 400 (hereinafter *Stallman I*), we first re-

jected plaintiff's argument that parent-child tort immunity did not apply to her because she was not a person, and thus not a member of Bari's family, at the time of the accident. We held that she was a legal person for the purposes of maintaining a lawsuit after her birth and, therefore, was a member of Bari's family. (129 Ill. App. 3d 859, 862, 473 N.E.2d 400, 402.) We next reversed the trial court's dismissal order, holding that plaintiff stated a cause of action in negligence against Bari. (129 Ill. App. 3d, 859, 865, 473 N.E.2d 400, 404.) Since the appeal involved solely the sufficiency of plaintiff's complaint, we remanded the cause to the trial court to determine the facts and then to determine whether those facts fell into any exceptions to the parent-child tort immunity rule. We believed that "plaintiff should [have been] given the opportunity to prove whether defendant Stallman's act of driving to a restaurant was not an act arising out of the family relationship and directly connected with family purposes and objectives." 129 Ill. App. 3d 859, 864, 473 N.E.2d 400, 403.

The sole issue in *Stallman I* was whether count II of plaintiff's complaint stated a cause of action. We held that it did. We also reviewed the parent-child tort immunity doctrine and its exceptions. We held that the applicability of the immunity rule was a question of fact. We, therefore, could not decide, and the trial court should not have decided, the applicability of the immunity rule on a motion to dismiss, since the motion attacks the legal sufficiency of a complaint and not its factual sufficiency. *Holland v. Arthur Andersen & Co.* (1984), 127 Ill. App. 3d 854, 862, 469 N.E.2d 419, 424.

The record shows that upon remand, Bari filed a motion for summary judgment, to which she attached her affidavit and excerpts from her deposition. Plaintiff filed no counteraffidavits or any other factual material in response; she filed only a memorandum of law. On January 31, 1986, the trial court found that parent-child tort immunity did apply to the facts and granted Bari's motion for summary judgment. Plaintiff appeals, pursuant to Supreme Court Rule 304(a) (103 Ill. 2d R. 304(a)).

■ ■ When a plaintiff appeals from a trial court's order of summary judgment for a defendant, the only issue on appeal is whether "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005.) If the documents that the trial court considers show that there is a material issue as to any material fact, summary judgment should not be granted. In ruling on a motion for summary judgment, the trial court

must construe the pleadings, depositions, and affidavits in the light most favorable to the nonmoving party. Conversely, when the evidence shows that no material issue of fact has been raised, the moving party is entitled to judgment as a matter of law. (*Artis v. Fibre Metal Products* (1983), 115 Ill. App. 3d 228, 231-32, 450 N.E.2d 756, 758.) Further, a trial court must take as true well-alleged facts in an affidavit, where uncontradicted by a counteraffidavit, despite any contrary averments in an adverse party's pleadings that merely purport to establish issues of fact. *Fooden v. Board of Governors of State Colleges & Universities* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497, 500-01.

On remand, Bari submitted evidence that substantiated her pleadings, which plaintiff did not contradict. Faced with uncontested facts, the trial court could rule, as a matter of law, that Bari's acts did not fall into any exception to the parent-child tort immunity rule and, therefore, the rule applied to these facts, shielding Bari from suit by plaintiff.

In the present appeal, plaintiff presents two alternate arguments. She first contends that although we must take Bari's well-pleaded and uncontradicted allegations as true, more than one inference or conclusion flows from those facts; therefore, we should deny summary judgment. Plaintiff secondly asks us to reevaluate the efficacy of the parent-child tort immunity doctrine itself. We address the second contention first.

■ The parent-child tort immunity doctrine bars a child from maintaining an action for damages against his or her parent. Illinois first recognized the doctrine in *Foley v. Foley* (1895), 61 Ill. App. 577. In *Foley*, plaintiff, a child, alleged that defendant, his parent, severely beat him on several occasions; that defendant wrongfully required him, as defendant's servant, to drive a vicious horse, which kicked and permanently injured him; and that defendant did not provide him with any medical aid. The appellate court held that plaintiff could not maintain an action for damages against his parent for maltreatment. The court based the rule on the public policy that a child should not contest with the parent and the parent's right to govern the child. 61 Ill. App. 577, 578-80.

We reviewed the immunity rule in *Stallman I* and concluded that the rule was still the law in Illinois, but eroded by *Schenk v. Schenk* (1968), 100 Ill. App. 2d 199, 241 N.E.2d 12. In *Schenk*, the appellate court limited the parent-child tort immunity rule to acts arising out of the family relationship and directly connected with family purposes and objectives. (*Stallman v. Youngquist* (1984), 129 Ill. App. 3d 859, 863, 473 N.E.2d 400, 403, quoting *Schenk v. Schenk* (1968), 100 Ill.

App. 2d 199, 204-06, 241 N.E.2d 12, 14-15.) We further noted that Illinois courts, relying on *Schenk*, have tended to restrict rather than expand the application of the rule. *Stallman v. Youngquist* (1984), 129 Ill. App. 3d 859, 864, 473 N.E.2d 400, 403-04.

## I—A

■ We must address two preliminary issues before we can reevaluate the efficacy of the parent-child tort immunity rule. We must first determine whether the Illinois Supreme Court has addressed this exact issue, because, where our supreme court has declared Illinois law on any point, that court alone can overrule and modify its previous opinion; such a decision binds all other judicial tribunals in this State, and it is the duty of those tribunals to follow such a decision in similar cases. *Agricultural Transportation Association v. Carpentier* (1953), 2 Ill. 2d 19, 27, 116 N.E.2d 863, 867; *Stopka v. Lesser* (1980), 82 Ill. App. 3d 323, 326, 402 N.E.2d 781, 783.

In *Nudd v. Matsoukas* (1956), 7 Ill. 2d 608, 131 N.E.2d 525, our supreme court held that the parent-child tort immunity rule does not apply to allegations of wilful and wanton misconduct. (7 Ill. 2d 608, 619, 131 N.E.2d 525, 531.) The court in *Nudd* did not hold that the doctrine bars an action based on negligence. In *Mroczynski v. McGrath* (1966), 34 Ill. 2d 451, 216 N.E.2d 137, the court only reacknowledged its holding in *Nudd*. (34 Ill. 2d 451, 454-55, 216 N.E.2d 137, 139.) In several subsequent cases involving the tort immunity of teachers, the supreme court merely noted that the parent-child tort immunity doctrine to analogize the rule to teacher immunity under the School Code. *Thomas v. Chicago Board of Education* (1979), 77 Ill. 2d 165, 171, 395 N.E.2d 538, 541; *Gerrity v. Beatty* (1978), 71 Ill. 2d 47, 49, 373 N.E.2d 1323, 1324; *Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 170, 347 N.E.2d 705, 708.

■ ■ The Illinois Supreme Court, thus, has never adopted the parent-child tort immunity rule enunciated in *Foley v. Foley* (1895), 61 Ill. App. 577. Rather, our supreme court has merely acknowledged the rule's existence while limiting its application to allegations of negligence and not wilful and wanton misconduct. Justice Goldenhersh noted this in his dissenting opinion in *Kobylanski*, in which Justices Ward and Schaefer joined. (*Kobylanski v. Chicago Board of Education* (1976), 63 Ill. 2d 165, 175, 347 N.E.2d 705, 712 (Goldenhersh, J., dissenting).) We note that the appellate court for the second district has rejected this analysis. (*Illinois National Bank & Trust Co. v. Turner* (1980), 83 Ill. App. 3d 234, 235-36, 403 N.E.2d 1256, 1258.) Since the appellate court created the parent-child tort immunity rule,

it is free to modify and interpret the doctrine to correspond with prevalent considerations of public policy and social needs. *Nudd v. Matsoukas* (1956), 7 Ill. 2d 608, 619, 131 N.E.2d 525, 531.

## I-B

We must next determine whether we are bound by our holding in *Stallman I*. In the prior appeal, we recognized the parent-child tort immunity rule as the law in Illinois, but noted that Illinois courts had eroded its with several exceptions. *Stallman v. Youngquist* (1984), 129 Ill. App. 3d 859, 863-64, 473 N.E.2d 400, 402-04.

■ Where the evidence on a subsequent appeal is the same as that on the first or prior appeal, or substantially so, the adjudications of the prior appeal become the law of the case. (*Hammer v. Slive* (1962), 35 Ill. App. 2d 447, 450, 183 N.E.2d 49, 50.) When there is such an identify of particular issues, facts, and evidence from the first to the second appeal, the decision of the prior appeal is binding upon us on a second appeal, regardless of whether our prior decision was right or wrong. *Weiland Tool & Manufacturing Co. v. Whitney* (1968), 100 Ill. App. 2d 116, 124, 241 N.E.2d 533, 538, *rev'd on other grounds* (1969), 44 Ill. 2d 105, 251 N.E.2d 242, quoted in *Yonan v. Oak Park Federal Savings & Loan Association* (1975), 27 Ill. App. 3d 967, 970-71, 326 N.E.2d 773, 776.

■ There are two exceptions, however, to the doctrine of law of the case. The first is where the supreme court, following the first appeal, makes a contrary ruling on the precise issues of law on which the appellate court had based its prior decision. The second exception allows the appellate court to find that its prior decision was palpably erroneous, but only when the court remanded the case for a new trial of all the issues. The rationale for the second exception is that the appellate court, on the second appeal, actually would be reaching a different decision based on a new and different trial. *Yonan v. Oak Park Federal Savings & Loan Association* (1975), 27 Ill. App. 3d 967, 971, 326 N.E.2d 773, 776-77, citing *Weiland Tool & Manufacturing Co. v. Whitney* (1968), 100 Ill. App. 2d 116, 124-25, 241 N.E.2d 533, 538.

■ We believe that the second exception to the doctrine of law of the case applies here. The trial court made no factual determination in *Stallman I*; we reviewed only the sufficiency of the pleadings and remanded the cause to the trial court for a factual determination. We expressly gave the parties an opportunity to have a trial and to develop a new record. We conclude, therefore, that we may abandon our holding in *Stallman I* insofar as it recognized the parent-child tort immunity doctrine in Illinois.

## II—A

We begin our reevaluation of parental tort immunity by reviewing both the history of the rule and its rationale. Several of the many courts that have abolished the rule in other States have done likewise. Those courts reached the same conclusions, which we now summarize.

The parental tort-immunity doctrine is an invention of the American courts. Although interspousal tort immunity originated in the early common law, English lawbooks record no case involving a personal tort between parent and child. (*Sorensen v. Sorensen* (1975), 369 Mass. 350, 353, 339 N.E.2d 907, 909; *Gibson v. Gibson* (1971), 3 Cal. 3d 914, 916, 479 P.2d 648, 649, 92 Cal. Rptr. 288, 289; *Falco v. Pados* (1971), 444 Pa. 372, 376, 282 A.2d 351, 353.) English and American courts have long allowed children to sue their parents in matters involving property. There is no reason to think, therefore, that the English law would not permit actions for personal torts as well. *Nocktonick v. Nocktonick* (1980), 227 Kan. 758, 760, 611 P.2d 135, 136; *Sorensen v. Sorensen* (1975), 369 Mass. 350, 353, 339 N.E.2d 907, 909; both citing W. Prosser, Torts, sec. 122, at 864-68 (4th ed. 1971), now found in W. Prosser & W. Keaton, Torts, sec. 122, at 904-07 (5th ed. 1984).

The Mississippi Supreme Court created the parental tort immunity doctrine in 1891. In *Hewlett v. George* (1891), 68 Miss. 703, 9 So. 885, the court, citing no authority, held simply that a child's personal tort action against a parent would disturb the "peace of society, and of the families, composing society;, and a sound public policy designed to subserve the repose of families and the best interest of society." (68 Miss. 703, 711, 9 So. 885, 887, quoted in *Nocktonick v. Nocktonick* (1980), 227 Kan. 758, 760, 611 P.2d 135, 136-37.) *Hewlett* was soon followed by *McKelvey v. McKelvey* (1903), 111 Tenn. 388, 77 S.W. 664, and by *Roller v. Roller* (1905), 37 Wash. 242, 79 P. 788. The court in each case barred the plaintiff child from suing his or her parent. Following these cases, most States adopted the doctrine of parental tort immunity (*e.g., Foley v. Foley* (1895), 61 Ill. App. 577), holding that an unemancipated minor child may not maintain a personal tort action against a parent. *Nocktonick v. Nocktonick* (1980), 227 Kan. 758, 761, 611 P.2d 135, 137.

American courts relied on public policy to justify the parental tort immunity rule, giving various policy reasons. (227 Kan. 758, 761, 611 P.2d 135, 137; Beal, *"Can I Sue Mommy?" An Analysis of a Woman's Tort Liability for Prenatal Injuries to Her Child Born Alive*, 21 San Diego L. Rev. 325, 334-35.) The majority of courts, however, have relied consistently on three justifications; that allow-

ing a child to sue a parent for a personal tort would (1) disrupt family harmony, (2) encourage collusion, perjury, and fraud between family members, and (3) impair parental authority and discipline. *E.g., Gibson v. Gibson* (1971), 3 Cal. 3d 914, 919, 479 P.2d 648, 651, 92 Cal. Rptr. 288, 291.

As soon as American courts embraced the parental tort immunity doctrine they began to create several qualifications and exceptions to the rule. This trend probably rested "on growing judicial distaste for a rule of law which in one sweep disqualified an entire class of injured minors." (3 Cal. 3d 914, 918, 479 P.2d 648, 650, 92 Cal. Rptr. 288, 290.) Today, there are very few jurisdictions, if any, that recognize parental immunity in its absolute form. *Nocktonick v. Nocktonick* (1980), 227 Kan. 758, 762, 611 P.2d 135, 138.

■■■■ Illinois courts have created many qualifications and exceptions to the parental tort immunity rule. For example, a child may sue a parent for damages proximately caused by a parent's wilful and wanton misconduct (*Nudd v. Matsoukas* (1956), 7 Ill. 2d. 608, 131 N.E.2d 525) or by a parent's conduct that does not arise out of the family relationship and not directly connected with family purposes and objectives. (*Schenk v. Schenk* (1968), 100 Ill. App. 2d 199, 241 N.E.2d 12.) Further, a minor child may sue a deceased parent (*Johnson v. Myers* (1972), 2 Ill. App. 3d 844, 277 N.E.2d 778) or a grandparent (*Gulledge v. Gulledge* (1977), 51 Ill. App. 3d 972, 367 N.E.2d 429.) Also, third parties who allege that a parent's negligence contributed to a child's injuries may seek contribution from the parent. *Larson v. Buschkamp* (1982), 105 Ill. App. 3d 965, 435 N.E.2d 221.

## II—B

■■ In light of modern conditions and conceptions of public policy, we join the many States that have abrogated the parental tort immunity doctrine. (*Nocktonick v. Nocktonick* (1980), 227 Kan. 758, 767-68, 611 P.2d 135, 141; Annot., 6 A.L.R.4th 1066 (1981).) We agree with the Massachusetts Supreme Judicial Court that "[c]hildren enjoy the same right to protection and to legal redress for wrongs done them as others enjoy. Only the strongest reasons, grounded in public policy, can justify limitation or abolition of those rights." (*Sorensen v. Sorensen* (1975), 369 Mass. 350, 359, 339 N.E.2d 907, 912.) We note that many learned commentators agree with this conclusion. (*E.g.,* W. Prosser & W. Keaton, Torts sec. 122, at 904-07 (5th ed. 1984); Beal, *"Can I Sue Mommy?" An Analysis of a Woman's Tort Liability for Prenatal Injuries to Her Child Born Alive*, 21 San Diego L. Rev. 325, 333 *et seq.* (1984); Hollister, *Parent-Child Immunity: A Doctrine*

*In Search of Justification,* 50 Fordham L. Rev. 489 (1982); Note, *Stallman v. Youngquist: Parent-Child Tort Immunity: Will Illinois Ever Give This Doctrine the Examination and Analysis It Deserves?,* 19 John Marshall L. Rev. 807 (1986).) We hold, therefore, that an unemancipated minor child may recover damages in an action brought against a parent for personal injuries caused by the negligence of the parent in the operation of a motor vehicle.

The three major justifications for parental immunity do not withstand analysis in light of modern conditions. The argument that parental immunity is necessary to preserve family harmony misconceives the facts of domestic life. The primary disruption to a harmonious family relationship is not the lawsuit brought for damages after the injury; rather, the disruption is the injury itself, resulting from the misconduct of a parent. It can hardly aid family reconciliation to deny an injured child access to the courts and, through the courts, to deny access to any liability insurance that the family might maintain. (*Nocktonick v. Nocktonick* (1980), 227 Kan. 758, 768, 611 P.2d 135, 141; *Sorensen v. Sorensen* (1975), 369 Mass. 350, 360, 339 N.E.2d 907, 913.) We agree with Judge Fuld of the New York Court of Appeals who described the situation and the necessary legal result:

> "Those parents who are worthy of affection will make provision for the crippled child to the extent of their ability without the spur of legal process. The child will be unwilling to sue, will have no need or thought to sue. What is right will be done, and it will be done out of a love that is stronger than the law. There may be some parents who are selfish or indifferent or cruel; if they turn the crippled child adrift when his minority is over, he will be a drag upon society and a burden to himself. We should say that they may not do so with impunity. There are other parents who, though willing, may be helpless. We should hold that the child is not to be denied the benefit of insurance that would be available for a stranger." *Badigan v. Badigan* (1961), 9 N.Y.2d 472, 478, 174 N.E.2d 718, 722, 215 N.Y.S.2d 35, 40 (Fuld, J., dissenting), cited in *Sorensen v. Sorensen* (1975), 369 Mass. 350, 361-62, 339 N.E.2d 907, 913.

Finally, we note the widespread existence of automobile liability insurance. Although insurance cannot create liability where no legal duty previously existed, it remains, nevertheless, a proper element in a discussion of the public policy behind abrogation of parental immunity. Where insurance exists, the domestic tranquility argument is hollow; in reality, the sought-after litigation is not between child and parent but between child and parent's insurance carrier. Far from being

a potential source of disharmony, the action is more likely to preserve the family unit in pursuit of a common goal—the easing of family financial difficulties stemming from the child's injuries. *Nocktonick v. Nocktonick* (1980), 227 Kan. 758, 768, 611 P.2d 135, 141-42; *Sorensen v. Sorensen* (1975), 369 Mass. 350, 362-63, 339 N.E.2d 907, 914.

We recognize, with other courts that have abolished parental tort immunity, the practical problem of possible collusion between parent and child aimed at obtaining an unjustified recovery from an insurance company. We depend on the juries and the trial judges to sift evidence in order to determine the facts and arrive at proper verdicts. Experience has shown that the courts are quite adequate for this task. In litigation between parent and child, judges and juries would naturally be mindful of the relationship and would be even more on the alert for improper conduct. *Nocktonick v. Nocktonick* (1980), 227 Kan. 758, 768-69, 611 P.2d 135, 142; *Sorensen v. Sorensen* (1975), 369 Mass. 350, 363-64, 339 N.E.2d 907, 914-15.

We further note that an insurance company has resources to defend itself against collusion. Under provisions ordinarily included in an insurance policy, the insurance company has the right to disclaim liability when the insured fails to cooperate with the company. A court may find lack of cooperation in inconsistent or contradictory statements by the insured or in collusion between the injured party and the insured that results in false statements to the company. *Nocktonick v. Nocktonick* (1980), 227 Kan. 758, 769, 611 P.2d 135, 142; *Sorensen v. Sorensen* (1975), 369 Mass. 350, 364, 339 N.E.2d 907, 915.

Some collusive claims may succeed. But this does not justify a blanket denial of recovery for all minors. It would be unjust to bar arbitrarily the claim of injured minors deserving of relief solely because some cases may involve possible collusion between two parties. *Nocktonick v. Nocktonick* (1980), 227 Kan. 758, 769, 611 P.2d 135, 142, quoting *Sorensen v. Sorensen* (1975), 369 Mass. 350, 365, 339 N.E.2d 907, 915.

The third popular justification of parental tort immunity is that allowing a child to sue a parent for a personal tort would impair parental authority and discipline. We limit our holding to the circumstances of the case before us: an automobile tort action brought by an unemancipated minor child against a parent. "Allowance of such an action does not undermine parental authority and discipline nor does it threaten to substitute judicial discretion for parental discretion in the care and rearing of minor children." (*Nocktonick v. Nocktonick* (1980), 227 Kan. 758, 769-70, 611 P.2d 135, 142.) We agree with the

Massachusetts Supreme Judicial Court that "there may be parental exercises of discretion and authority which should be immune from scrutiny in a court of law. However, we are not here confronted with such cases and we need not speculate as to the scope of our holding." (*Sorensen v. Sorensen* (1975), 369 Mass. 350, 366, 339 N.E.2d 907, 916.) Further, "[w]hen confronted with other cases involving claimed parental immunity, we will at that time determine to what extent parental immunity or privilege should be recognized under the particular circumstances of the case then before us." *Nocktonick v. Nocktonick* (1980), 227 Kan. 758, 770, 611 P.2d 135, 142.

Our holding abrogating parental tort immunity under the facts of this case does not create a new legal duty where none previously existed. "Rather, we merely remove the barrier to the enforcement of liability between parent and child." *Sorensen v. Sorensen* (1975), 369 Mass. 350, 366-67, 339 N.E.2d 907, 916.

## II—C

■■ In Illinois, an infant, who is born alive and survives, can maintain a tort action to recover for prenatal injuries that are medically provable as resulting from another's negligence. (*Daley v. Meier* (1961), 33 Ill. App. 2d 218, 224, 178 N.E.2d 691, 694.) Count I of plaintiff's complaint named Youngquist, the other driver, as a defendant; it is still in the trial court. Our holding simply allows plaintiff to litigate count II of her complaint, naming her mother as a defendant. We note that the Michigan Court of Appeals, applying Michigan's qualified abrogation of parental tort immunity, has held that a child's mother bears the same liability for negligent conduct, resulting in prenatal injuries, as would a third person. *Grodin v. Grodin* (1981), 102 Mich. App. 396, 301 N.W.2d 869.

For the foregoing reasons, we reverse the trial court's grant of summary judgment on count II of the complaint naming plaintiff's mother as a defendant. We remand the cause to the trial court to permit the parties to proceed to trial on the merits.

Reversed and remanded.

LINN and JIGANTI, JJ., concur.