THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ENICE LYLES, Defendant-Appellant.

First District (4th Division)   No. 1—87—1207

Opinion filed December 27, 1990.

Michael J. Pelletier and Karen Daniel, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Marilyn Schlesinger, Spe-

cial Assistant State's Attorney, and Renee Goldfarb, Assistant State's Attorney, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:
Defendant, Enice Lyles, was charged with murder (Ill. Rev. Stat. 1977, ch. 38, par. 9—1) in a three-count indictment as to Mary (Nichols) Thigpen and her two sons, Robert and Roderick Nichols. After a jury trial, defendant was found guilty of the murders of Robert and Roderick Nichols, and of voluntary manslaughter (Ill. Rev. Stat. 1977, ch. 38, par. 9—2) as to Ms. Thigpen. Defendant was sentenced to death for murder of the two boys and to 14 years in the Illinois Department of Corrections for the voluntary manslaughter of Ms. Thigpen. The Illinois Supreme Court vacated the judgment and remanded the cause for resentencing. Defendant was resentenced to a term of natural life imprisonment without parole for the two murders.

On appeal, defendant challenges the jury selection process at the original trial. Defendant claims that his case must be remanded because the prosecution exercised its peremptory challenges in a racially discriminatory manner in violation of the equal protection clause of the fourteenth amendment. The People maintain that a remand of defendant's claim is barred by the preclusion doctrine of law of the case, and by other such laws and doctrines where the Illinois Supreme Court has found that defendant failed to establish a case of purposeful exclusion in jury selection.

We affirm.

BACKGROUND
Defendant was charged in 1978 with the murders of Mary Thigpen and her two sons. Jury selection for the trial began on May 26, 1982. The People exercised 12 peremptory challenges to remove 12 African-American venirepersons during the *voir dire*. After all of the selected jurors were sworn, defendant, through his counsel, moved for a mistrial alleging that he would be denied a fair trial because the State systematically exercised its peremptory challenges to exclude blacks from the jury. In support of his motion, defendant entered into the record the names of the 12 African-American venirepersons whom the People excluded.

The trial court denied defendant's motion. The trial court also made the following four findings: (1) the assistant State's Attorney tendered four African-American venirepersons to defendant; (2) the People did not exclude black potential jurors on the basis of their race; (3) there were legitimate reasons for excluding six of the black

venirepersons; and (4) the State exercised its challenges in an "honorable manner." Finally, the court found defendant guilty of murder and voluntary manslaughter.

Defendant was granted a bifurcated sentencing hearing before the same jury. On July 22, 1982, defendant was sentenced to death for the murders, and 14 years in the Illinois Department of Corrections for voluntary manslaughter. The sentence was stayed pending direct appeal to the Illinois Supreme Court. Ill. Const. 1970, art. VI, §4(b); 87 Ill. 2d Rules 603, 609(a).

Defendant appealed directly to the Illinois Supreme Court and asked the court to vacate the judgment. Defendant also raised the jury selection issue. Defendant argued that he did not receive a fair trial due to the People's discriminatory use of peremptory challenges. The court held that defendant failed to show that the State purposefully excluded African-American venirepersons. (*People v. Lyles* (1985), 106 Ill. 2d 373, 392-93, *cert. denied* (1985), 474 U.S. 859, 88 L. Ed. 2d 141, 106 S. Ct. 171.) The court found that 11 of the 12 venirepersons excluded were challenged for acceptable reasons and that the challenges had not been exercised solely on the basis of race. (See *Lyles*, 106 Ill. 2d at 395.) The court noted that nine of the venirepersons had been convicted or accused of a serious crime, or knew someone who had been. The Illinois Supreme Court also vacated the death penalty and remanded the cause for a new sentencing hearing.

On March 23, 1987, defendant was resentenced to a term of natural life without parole for the two murders. Prior to defendant's second sentencing hearing, the United States Supreme Court decided *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712.

OPINION

Defendant contends that he is entitled to have his case remanded for a full hearing pursuant to *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712. Defendant asserts that he is entitled to a *Batson* hearing even though he was convicted prior to *Batson*, because *Batson* is applicable retroactively to all cases pending on direct appeal or not yet final at the time that *Batson* was announced. Defendant relies upon *Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708. The People maintain that the doctrine of the law of the case precludes this court from remanding the cause where the Illinois Supreme Court reached a conclusion upon the issue in an earlier appeal.

■ The United States Supreme Court has held that the equal

protection clause of the fourteenth amendment prohibits a prosecutor from exercising peremptory challenges to dismiss potential jurors solely on account of their race. (*Batson,* 476 U.S. at 89, 90 L. Ed. 2d at 83, 106 S. Ct. at 1719.) The Court mandated that where a defendant objects to the use of peremptory challenges, his cause must be remanded to the trial court for a *Batson* hearing, where he will have an opportunity to establish a *prima facie* case of discrimination.

■■ A *prima facie* case of discrimination may be established in the following manner:

> "[D]efendant first must show that he is a member of a cognizable racial group, [citation], and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' [Citation.] Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." (*Batson,* 476 U.S. at 96, 90 L. Ed. 2d at 87-88, 106 S. Ct. at 1723.)

"However, as a general rule, the mere number of black venire members peremptorily challenged, without more, will not establish a *prima facie* case of discrimination." *People v. Garrett* (1990), 139 Ill. 2d 189, 203.

■■ Once a defendant shows a *prima facie* case of purposeful discrimination, the burden shifts to the State to articulate neutral reasons for challenging black venirepersons. (*Batson,* 476 U.S. at 97, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723.) The trial court will then determine whether the defendant has established a case of purposeful discrimination. (*Batson,* 476 U.S. at 98, 90 L. Ed. 2d at 88-89, 106 S. Ct. at 1723-24.) "In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances." (*Batson,* 476 U.S. at 96-97, 90 L. Ed. 2d at 88, 106 S. Ct. at 1723.) In *People v. Hooper* (1989), 133 Ill. 2d 469, the court stated:

> "[I]n determining whether an inference of discrimination can be drawn [the court should consider the following]: a 'pattern' of excusing black jurors; 'the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges' [citation]; the disproportionate use of peremptory challenges to blacks [citations]; the level of black representation in the venire as compared to the jury [citation]; whether the ex-

cluded blacks were a heterogeneous group sharing race as their only common characteristic [citation]; the race of the defendant and the victim [citations]; and the race of the witnesses [citation]." *Hooper*, 133 Ill. 2d at 503-04.

■ The United States Supreme Court later mandated that the standard established by *Batson* applies retroactively to all cases that were pending on direct appeal or not yet ·final. *Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708.

■ In the present appeal, defendant argues that his case became final in 1987, one year after the *Batson* decision was rendered, after he was resentenced. We rule that there was not a final judgment in defendant's case at the time the *Batson* decision was rendered. In Illinois, a "judgment" is defined as ·"an adjudication by the court that the defendant is· guilty or not guilty, and if the adjudication is that the defendant is guilty, it includes the *sentence* pronounced by the court." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 38, par. 1005–1–12.) The Illinois Supreme Court has held that "the final judgment in a criminal case is the sentence." (*People v. Warship* (1974), 59 Ill. 2d 125, 130.) Our supreme court has also held that "[a] judgment is final if it determines the litigation on the merits so that if affirmed the only thing remaining is to proceed with the execution on the judgment." (*Relph v. Board of Education of DePue Unit School District No. 103* (1981), 84 Ill. 2d 436, 441.) A judgment of a court of review is *not* final if such judgment does not terminate the litigation, but remands the cause to the trial court with directions that a judgment be entered, and said judgment would be appealable to the appellate court under the Illinois Constitution. *Relph*, 84 Ill. 2d at 442.

Upon applying the aforementioned case law, we find that the judgment in *People v. Lyles* (1985), 106 Ill. 2d 373, was not final until 1987, when, upon remand, the final sentence was rendered. Although the Illinois Supreme Court had already reviewed defendant's case upon the merits by the time the *Batson* decision was rendered, the judgment of the supreme court was not a final judgment because it did not terminate the litigation. The supreme court remanded the case to the trial court with directions that the court resentence defendant. In addition, the new sentence was appealable to a court of review. (See *Relph*, 84 Ill. 2d at 442.) The *Batson* decision was rendered while defendant's case was on remand for resentencing. Therefore, his case was not final at the time that *Batson* was announced.

■ However, we cannot give *Batson* retroactive effect in this case because a relitigation of defendant's claim is directly barred by the preclusion doctrine of the law of the case. The People have cor-

rectly asserted that the doctrine of the law of the case precludes a remand of this cause.

■■ The doctrine of the law of the case provides that a "determination of [a question] of law will generally be held to govern [the] case throughout all [of] its subsequent stages where such determination has already been made on a prior appeal to a court of last resort." (Black's Law Dictionary 798 (5th ed. 1979).) "[A]n appellate court's determination on a legal issue is binding on both the trial court on remand and appellate court on a subsequent appeal given the same case and substantially the same facts." Black's Law Dictionary 887 (6th ed. 1990).

■■ In *Stallman v. Youngquist* (1987), 152 Ill. App. 3d 683, *rev'd on other grounds* (1988), 125 Ill. 2d 267, we found that "[w]here the evidence on a subsequent appeal is the same as that on the first or prior appeal, or substantially so, the adjudications of the prior appeal become the law of the case." (*Stallman,* 152 Ill. App. 3d at 689; see also *Martin v. Federal Life Insurance Co.* (1987), 164 Ill. App. 3d 820, 825.) There are two exceptions to this doctrine. "The first is where the supreme court, following the first appeal, makes a contrary ruling on the precise issues of law on which the appellate court had based its prior decision. The second exception allows the appellate court to find that its prior decision was palpably erroneous, but only when the court remanded the case for a new trial of all the issues." (*Stallman,* 152 Ill. App. 3d at 689; see also *Martin,* 164 Ill. App. 3d at 825.) Neither of the exceptions applies to this case.

The doctrine of the law of the case applies to this claim because the Illinois Supreme Court reviewed defendant's claim on the merits, and the evidence in the case at bar is the same evidence that was previously reviewed by the Illinois Supreme Court. The supreme court found that the People did not engage in the purposeful exclusion of black venirepersons during the *voir dire.* Therefore, the supreme court's determination of this question of law is the law of the case, and its determination is legally binding upon this court.

For the foregoing reasons, we affirm. The People have requested costs and fees of $75 pursuant to *People v. Nicholls* (1978), 71 Ill. 2d 166, and *People v. Agnew* (1985), 105 Ill. 2d 275. As a part of our judgment, we grant the People the aforementioned costs and fees.

Affirmed.

LINN and JIGANTI, JJ., concur.