**Hortensia C. DRICKERSEN, Petitioner,**

**v.**

**Charles G. DRICKERSEN, as the natural father, guardian, and next friend of Pandora M. Drickersen, et al., Respondents.**

**No. 2634.**

Supreme Court of Alaska.

Jan. 8, 1976.

---

Murphy L. Clark and Peter A. Galbraith, Anchorage, for petitioner.

James A. Parrish, Fairbanks, for respondents.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and BURKE, JJ.

## OPINION

RABINOWITZ, Chief Justice.

This petition raises first impression questions relating to Alaska Rule of Civil Procedure 14(a), concerning third-party practice, and the doctrine of res judicata.

■ On August 28, 1971, petitioner was involved in an automobile accident which occurred near Mile 268 on the Richardson Highway. Petitioner was the driver of an automobile in which respondent Mr. Drickersen and the Drickersen children were passengers. As petitioner was attempting to pass an Army convoy, the lead convoy vehicle turned left and the two vehicles collided. On May 23, 1972, respondent Charles Drickersen, individually and as guardian on behalf of the minor children, filed the instant case in the Superior Court of the State of Alaska, Fourth Judicial District, claiming that petitioner was negligent and that her negligence was a proximate cause of the accident and resultant injuries to plaintiffs.[1] Subsequently, on February 8, 1973, respondents filed an action in the United States District Court for the District of Alaska against the United States under the Federal Tort Claims Act, alleging that the negligence of agents of the United States was a proximate cause of the accident and resultant injuries to the plaintiffs.

In this latter case the United States filed a third-party complaint against Mrs. Drickersen seeking recovery for "all sums that may be adjudged against defendant United States was a proximate cause of plaintiffs" and alleging that Mrs. Dricker-

sen's negligence caused the accident. In this federal litigation, respondent Mr. Drickersen did not attempt to assert any claim against petitioner Mrs. Drickersen.

Respondents' district court claim against the United States was tried to a judge at the same time the third-party claim of the United States was tried to a jury. The jury found that Mrs. Drickersen was negligent but that her negligence was not a proximate cause of the accident. The federal judge found that the United States was not liable to respondents. Respondents have appealed this trial judge's decision to the Ninth Circuit Court of Appeals. No appeal was taken by the United States from the jury's verdict.

Based on the outcome of the trial in federal court, petitioner Mrs. Drickersen moved in the superior court for summary judgment pursuant to Rule 56(b), Rules of Civil Procedure. Petitioner grounded her motion for summary judgment on the premise that res judicata and collateral estoppel precluded maintenance of the superior court litigation. In its order denying petitioner's motion for summary judgment, the superior court reasoned in part:

> The plaintiff [sic] at no time sought to present in Federal Court their claims against defendant third-party plaintiff in that Court. It may very well be that the plaintiffs here could have done so, but the fact is they did not. I find no authority requiring citizens of this state to litigate their differences in Federal Court. This is an election that is available to the citizens of this state if pendent jurisdiction exists and proper application is made in Federal Court. The Federal Court can under certain circumstances assume original and pendent jurisdiction. If it does not, then the parties are not precluded by the fact that they have failed to seek pendent jurisdiction in

---

1. In *Cramer v. Cramer*, 379 P.2d 95 (Alaska 1963), we held that a woman was entitled to bring an action against her husband during coverture or thereafter for a tort to her person caused by his negligent conduct while the parties were married. In 1967, in *Hebel v. Hebel*, 435 P.2d 8 (Alaska 1967), this court ruled that a minor child had the right to bring a claim for relief against her parent for negligent infliction of harm.

Federal Court from pursuing their State remedies.

For reasons which will be detailed, we affirm the judgment of the superior court.

In her petition to this court, Mrs. Drickersen advances primarily two arguments in support of her position that the superior court's denial of summary judgment should be reversed. First, she contends that res judicata bars the state court suit against her "because respondent had the opportunity to litigate petitioner's liability to him in federal court." Petitioner further argues that since "[r]espondent was a party or was in privity with a party to the federal court action . . ." application of the principles of collateral estoppel bars the superior court action.

■ We will first examine petitioner's assertion that a genuine *opportunity* to litigate the claim presented in this case below was available to respondent in the federal

forum. Federal jurisdiction being interstitial in nature, it is clear that no independent ground of federal jurisdiction would exist in any action between Mr. Drickersen, the children, and Mrs. Drickersen based on the latter's negligence. Petitioner's theory must be that ancillary jurisdiction would exist in the event respondents filed a claim pursuant to Federal Rule of Civil Procedure 14.[2] Respondents, on the other hand, assert that such jurisdiction would be contrary to the clear weight of authority in the federal courts and argue that, even if this court should determine that jurisdiction over the claim would be accepted, respondents ought not be penalized for their reliance on the weight of federal authority.

The present conflict in federal authority arises as a result of the landmark case of *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).[3]

2. Both parties take the view that resolution of this question is controlled by Rule 13(g), Federal Rules of Civil Procedure. They are mistaken. In the federal litigation, a claim by Mr. Drickersen, individually and on behalf of the children against the third-party defendant, cannot be classified as a cross-claim because in that suit the Drickersens are not co-parties. 3 J. Moore, Moore's Federal Practice ¶ 13.34[1], at 13–871, 13–872, n. 4 (2d ed. 1974) [hereinafter cited as Moore's Federal Practice] ; *e. g., Stahl v. Ohio River Co.*, 424 F.2d 52 (3d Cir. 1970). The relevant rule of procedure is Rule 14(a), Federal Rules of Civil Procedure, which provides in part that: "The plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff . . . ." However, since the permissive "may" appears in both Rules 13(g) and 14(a), Federal Rules of Civil Procedure, the arguments presented by counsel still are of some relevance.

3. In 3 Moore's Federal Practice ¶ 14.27[1], the author describes the situation at present as follows:

The concept of ancillary jurisdiction was not regarded as extending so far as to permit a plaintiff, by this roundabout method [suing impleaded defendant], to

recover a judgment against a citizen of the same state on a non-federal cause of action. The courts, with *almost complete unanimity*, have taken this view. While the earlier decisions held impleader to be ancillary where the question was merely one of bringing the third party into the case, they drew the line at that point and refused to permit plaintiff to amend his complaint to state a claim against a co-citizen. (Footnotes omitted, emphasis added)

Professor Moore urges a re-examination of this position in light of *Gibbs*. See 3 Moore's Federal Practice ¶ 14.27[1]. In *Gibbs* the Supreme Court overruled *Hurn v. Oursler*, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933), and held that pendent jurisdiction, ". . . in the sense of judicial *power*, exists. whenever there is a claim 'arising under . . . the Laws of the United States . . .' . . . and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' " 86 S.Ct. at 1138, 16 L.Ed.2d at 227 (footnote omitted). The Court went on to assert that the power to exercise pendent jurisdiction is discretionary and justification for its assertion lies in considerations of judicial economy, convenience, fairness to the litigants, and comity.

As the author states in Note, 81 Harvard Law Review 657, 672 (1968):

> . The implications of *Gibbs* may be felt in other situations. Its recognition of economy and convenience as important jurisdictional factors may ultimately result in the development of an estoppel rule against plaintiffs who fail to assert all their nonfederal claims which could be heard under pendent jurisdiction.

Petitioner argues that when the United States is a party in a Federal Tort Claims Act suit, the rationale, which generally prohibits the federal courts from allowing Rule 13 cross-claims grounded in state law (or Rule 14(a) claims for that matter), does not hold. The reason for generally disallowing such claims was that diversity of citizenship jurisdiction is destroyed when citizens of the same state assert claims against each other. But here the United States is sued in the federal forum because, under 28 U.S.C. § 1346, it must be, and it in turn sues in the federal court not under diversity jurisdiction but rather because it must do so pursuant to 28 U.S.C. § 1345.[4] Thus, there is no question of defendant and plaintiff collusively choosing a federal forum where defendant may implead a third-party defendant whom plaintiff then directly sues.[5] Petitioner then cites this court to *Davis v. United States,* 350 F.Supp. 206, 207–08 (E.D.Mich.1972),[6] where the court said:

> In *United Mines Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the court stated that as between a single plaintiff and a single defendant in the interest of judicial economy a Federal Court may exercise jurisdiction over claims that ordinarily could not be brought in a Federal Court when the Federal and State claims are so interrelated as to be capable of being treated as one case. There must be a common nucleus of operative fact and there must be a substantial Federal claim. Here the suits are completely intertwined . . . .. Moreover, the Federal claim here is indeed substantial; this court has jurisdiction over the parties here by virtue of the Federal Tort Claims Act, under which the Federal Courts are the only courts that have the jurisdiction to hear cases sounding in tort against the Federal Government. The third party defendants are properly in the case because of the government's claim of liability over.

> . . . . . .

> As long as there is only one wrong and one recovery, as here, and, as here, all parties are properly before the court, whether as plaintiff, defendant or third party defendant, it matters not how many defendants there are, nor does it matter that one of the claims between two of the parties is not supported by independent jurisdictional grounds.

*Accord, Jacobs v. United States,* 367 F. Supp. 1275 (D.Ariz.1973). As petitioner

---

4. Professor Moore argues that the most obvious case for taking jurisdiction of a claim by plaintiff against a third-party defendant under the trend initiated by *Gibbs* is where the original suit between plaintiff and defendant is based on the exclusive jurisdiction of the federal courts, as this one is. 3 Moore's Federal Practice ¶ 14.27[1], at 14–572, 14–573.

5. *See* Fraser, *Ancillary Jurisdiction and Joinder of Claims in Federal Courts,* 33 F.R. D. 27, 41–43 (1964), arguing for ancillary jurisdiction of claims by plaintiff against a third-party defendant except where collusion actually exists. The article points out that the likelihood of such collusion is lessened since the 1946 amendment to Rule 14 which

deleted those words in the rule which allowed joinder on the basis that the third-party defendant is liable to plaintiff. A third-party defendant may only be joined on the basis of liability to the third-party plaintiff.

6. In *Davis,* plaintiff, administratrix of a deceased airplane passenger's estate, sued the United States under the Federal Tort Claims Act for negligence in, *inter alia,* furnishing flight instructions. The United States filed a third-party action against both the pilot's estate and the owners of the airplane. Plaintiff attempted to name the third-party defendants as defendants even though diversity jurisdiction was lacking. The *Davis* court allowed plaintiff to sue the third-party defendant directly.

points out, most of respondents' cases involving cross-claims against third parties are pre-*United Mine Workers v. Gibbs* and are thus questionable authority. Respondents do cite several post-*Gibbs* cases but these cases contain significantly different fact situations. *Mickelic v. United States Postal Service,* 367 F.Supp. 1036 (W.D. Pa.1973), goes so far as to state that *Davis* has been disregarded as authority. The *Mickelic* court concluded that *Davis* and its progeny are unwarranted extensions of *Gibbs*.[7]

In short, we think it unclear whether the United States District Court would have exercised its discretion so as to accept jurisdiction over a suit brought, pursuant to Rule 14, by respondents against petitioner.[8] In order to reach the important res judicata and collateral estoppel issues raised by this complaint, we shall assume *arguendo* that the United States District Court would have accepted jurisdiction.

Given this assumption, we must answer the question whether respondents' superior court action is then barred by application of res judicata principles. The gist of petitioner's argument here is that Mr. Drickersen had an opportunity to litigate the issue of Mrs. Drickersen's liability to him and the children in the federal court action. Not having availed himself of this opportunity in the federal forum, he is barred from asserting it now.

■ Thus, we must decide whether the permissive phraseology of Rule 14 of Alaska's Rules of Civil Procedure renders the application of the doctrine of res judicata inappropriate.[9] We look to the appropriate Alaska Rule of Civil Procedure because the bar of res judicata has been raised in the superior court action and the question thus becomes one of whether it is the policy of the courts of Alaska to bar claims which might have been asserted in prior actions. Resolution of this policy question in turn requires examination of the purposes of Rule 14(a) and the doctrine of res judicata, as well as relevant decisional law and commentary.

■ It has been stated that the general purpose of Rule 14 is

. . . to avoid two actions which should be tried together to save the time and cost of a reduplication of evidence, to obtain consistent results from identical or similar evidence, and to do away with the serious handicap to a defendant of a time difference between a judgment

---

7. Respondents note that *Davis* and *Jacobs* both involved aircraft accidents where the cross-claims contained issues of federal law.

8. The uncertain state of federal law in this area furnishes an additional ground for our refusal to apply the bar of res judicata or collateral estoppel in the instant case. In this regard, we think Justice Brennan's opinion in *England v. Louisiana State Bd. of Medical Examiners,* 375 U.S. 411, 422–23, 84 S.Ct. 461, 468, 11 L.Ed.2d 440, 449 (1964), is of relevance. There the Supreme Court said:

On the record in the instant case, the rule we announce today would call for affirmance of the District Court's judgment. But we are unwilling to apply the rule against these appellants. As we have noted, their primary reason for litigating their federal claims in the state courts was assertedly a view that Windsor required them

to do so. That view was mistaken, and will not avail other litigants who rely upon it after today's decision. But we cannot say, in the face of the support given the view by respectable authorities, including the court below, that appellants were unreasonable in holding it or acting upon it. We therefore hold that the District Court should not have dismissed their action. (Footnote omitted).

9. Alaska Rules 13(g) and 14(a), Rules of Civil Procedure, parallel their federal counterparts. Since Alaska Rules 13(g) and 14(a) are derived from and are substantially the same as their federal counterparts, we view federal decisional law construing the Federal Rules of Civil Procedure, and commentary regarding these rules, as relevant authorities for purposes of construing Alaska's Rules of Civil Procedure.

against him, and a judgment in his favor against the third-party defendant.[10]

Professor Moore makes the further point that the impleader provided for in Rule 14 is permissive and not compulsory.[11] As Rule 14(a) is presently structured, a third party may now be brought in under Rule 14(a) only on an allegation of liability over to the defendant. Once the third party has been impleaded, the original plaintiff may ". . . assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff . . .." In regard to the original plaintiff's claims against the third-party defendant, Professor Moore holds the view that, "The plaintiff is not *required* to assert such a claim, and is not barred from bringing a subsequent action against the third party by his failure to do so."[12] Thus, Professor Moore further concludes that, "An original party may, but is not obliged to implead a third party, and his failure to do so, or the

court's refusal to permit him to do so, affects none of his substantive rights.[13]

Professors Wright and Miller reach a similar conclusion. They assert that, "The original plaintiff need take no action with regard to any third party claim that has been added to the action."[14] The claims of plaintiff against defendant, and of third-party plaintiff against third-party defendant especially in light of the 1946 amendment to Federal Rule of Civil Procedure 14 (*cf.* footnote 5, *supra*) will often involve diametrically opposed views of the facts. The things decided in such a situation are decided in light of the *complex* of parties and claims including the absence of direct allegations of liability between plaintiff and third-party defendant. As a matter of common sense, it hardly seems fair to hold a party in the earlier litigation to a position in the later litigation which is irrelevant to his concerns in the former case; the original plaintiff ought not be forced to simultaneously attack the defendant and

---

10. 3 Moore's Federal Practice ¶ 14.04, at 14–189 (footnotes omitted).

11. *Id.* ¶ 14.06, at 14–1201. In this respect Professor Moore notes that Rule 14 is analogous to Rule 13(g) which treats cross-claims against a co-party.

12. *Id.* ¶ 14.16[1], at 14–375 (emphasis in original; footnote omitted); *Herrington v. Jones*, 2 F.R.D. 108 (E.D.La.1945).

13. 3 Moore's Federal Practice ¶ 14.06, at 14–201. Expanding on this thesis, Professor Moore states (footnotes omitted):
Thus, it is no defense to an action for contribution that the plaintiff, when originally sued by the injured party in a federal court, failed to bring in the defendant as a third party. In passing on this question, the court held:
'It is clear that said Rule 14 confers upon a defendant the right to bring in additional defendants which he may exercise or ignore as he sees fit. It was not the intent of the . . . Rules to defeat substantive rights in a case where there has been an election not to utilize such right.'

14. C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1459, at 311 (1971). Analogous reasoning is applied to the question

of the applicability of res judicata and collateral estoppel under Rule 13(g), Federal Rules of Civil Procedure. Here Professors Wright and Miller state:
Several important distinctions between cross-claims and counterclaims should be kept in mind other than the obvious difference in the alignment of the parties. Rule 13(g), unlike Rule 13(a), always is permissive. A party who decides not to bring his claim under Rule 13(g) will not be barred by res judicata, waiver, or estoppel from asserting it in a later action, as he would if the claim were a compulsory counterclaim under Rule 13(a). *Id.* § 1431 at 164 (footnotes omitted). *Accord*, (as to permissive nature of Rule 13(g)) C. Wright, Law of Federal Courts § 80, at 351–52 (2d ed. 1970); 3 Moore's Federal Practice ¶ 13.34[1], at 13–871.
Under this analysis, cross-claims are always permissive and a party is not compelled to assert a cross-claim on penalty of being prohibited from asserting the claim for relief in a subsequent suit. *American Sur. Co. of N. Y. v. Fazel*, 20 F.R.D. 110 (S.D.Iowa 1956); *Burrell v. Southern Pacific Co.*, 13 Ariz.App. 107, 474 P.2d 466, 469 (1970); *St. Paul Fire and Marine Ins. Co. v. Thompson*, 152 Mont. 396, 451 P.2d 98, 101 (1969).

defend him. Thus Professors Wright and Miller assert:

> The question of adversity . . . is important because of its relationship to the doctrine of former adjudication. If the parties are not adverse, then the determination of issues between the original parties or the parties to the third-party claim, regardless of how identical they might be with issues that are part of the unasserted claims existing between plaintiff and the third-party defendant, may not be given collateral estoppel effect in a later action between plaintiff and the third-party defendant.[15]

Professors Wright and Miller's view regarding adversity and its impact on applicability of res judicata necessitates an examination of the res judicata rule.

■ Res judicata is a doctrine judicial in origin which has as its primary objective claim preclusion or judicial finality. The term is used to denote two things in respect to the effect of a valid, final judgment:

> (1) that such a judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them, upon the same claim or demand; and, (2) that such a judgment constitutes an estoppel, between the same parties or those in privity with them, as to matters that were necessarily litigated and determined although the claim or demand in the subsequent action is different.[16]

The Supreme Court of the United States has opined that the doctrine of res judicata is not a technical rule, but a rule of fundamental repose for both society and litigants. Its salutary principle " . . . is founded upon the generally recognized public policy that there must be some end to litigation and that when one appears in court to present his case, is fully heard, and the contested issue is decided against him, he may not later renew the litigation in another court."[17]

■■ In *State v. Baker,* 393 P.2d 893, 896 (Alaska 1964) (footnote omitted), we stated, "[Res judicata] bars a second suit between the same parties on the same subject matter resolving the same issues between the parties in the same capacity or

---

15. C. Wright and A. Miller, Federal Practice and Procedure: Civil § 1459, at 315 (1971) (footnote omitted). The American Law Institute, Restatement of the Law of Judgments (1942) [hereinafter cited as Restatement of Judgments], is in accord. Section 82 provides:

> The rendition of a judgment in an action does not conclude parties to the action who are not adversaries under the pleadings as to their rights inter se upon matters which they did not litigate, or have an opportunity to litigate, between themselves.

The Restatement comments state that, "The rules of res judicata are based upon an adversary system of procedure. . . . Because of this, the claims of persons who are not parties to the action are not . . . affected either by the judgment or by the litigation of any issue upon which the judgment depends." *Cf.* Restatement of Judgments § 82, Illustration 1. *Compare* Restatement of Judgments § 68. Plaintiff and third-party defendant are not adversaries under the pleadings. *Cf.* footnote 2, *supra.*

16. 1B Moore's Federal Practice ¶ 0.405, at 621 (footnote omitted). As to the first connotation, Professor Moore notes that the judgment constitutes a bar preventing relitigation of 11 grounds for, or defenses to, recovery that were available to the parties regardless of whether they were judicially determined. *Cf.* Restatement of Judgments, §§ 47, 48, 62. Under the second connotation of res judicata the judgment prevents the parties from relitigating only those matters that were determined. *Accord,* Restatement of Judgments § 68.

In *State v. Baker,* 393 P.2d 893, 897 (Alaska 1964) (footnote omitted), this court stated:

> . . . parties ought not to be permitted to litigate the same issue more than once and . . . when a right or fact has been judicially determined by a court of competent jurisdiction or an opportunity for such trial has been given, the judgment of the court, so long as it remains unreversed, should be conclusive upon the parties and those in privity with them in law or estate.

*See also Moran v. Poland,* 494 P.2d 814, 815 (Alaska 1972).

17. *Heiser v. Woodruff,* 327 U.S. 726, 733, 66 S.Ct. 853, 856, 90 L.Ed. 970, 976 (1946) (citation omitted).

■

quality." In *Baker,* we also remarked that while res judicata is applicable only to suits involving identical causes of action, when a second action is upon a different cause, collateral estoppel will preclude from litigation any issues actually adjudicated in the previous action involving the same parties or their privies.[18] In discussing the meaning of "privity" in *Pennington v. Snow,* 471 P.2d 370, 374–75 (Alaska 1970) (footnotes omitted), we said:

> The usual statement of the identity of parties requirement is that a judgment has conclusive force only between persons who are parties to the action or in privity with them. Broken down, this requirement may be seen to encompass two separate rules. There is, first, inherent in the identity of parties requirement the rule of privity, which states that the only persons *bound* by a judgment are those who are parties to the action or in privity with the parties.

Recognizing that the boundaries of privity have never been clearly defined, we concluded in *Pennington* that

> . . . the existence of privity must depend upon a finding that the first action provided substantial protection of the rights and interests of the non-party. In each case, then, the determination of whether privity exists must be made by an analysis of the relationship of the rights and interests of the parties to be held in privity. . . . [B]efore privity may be found to exist, the non-party must have notice and an opportunity to

be heard; the procedure must insure the protection of the rights and interests of the non-party, and he must in fact be adequately represented by the parties. The extent to which the interests of the non-party are identical to those of the parties of the action provides a gauge for the determination of the adequacy of representation.[19]

In Professor Moore's view, the requirement of identity of parties is justified by the ancient doctrine that a person cannot be bound by a judgment unless he has had reasonable notice of the claim against him and an opportunity to be heard in opposition to that claim.[20]

■ With the foregoing discussion in mind, we return to the question of whether it is the policy of the courts of Alaska to bar claims which a party might have asserted, pursuant to Rule 14, Alaska Rules of Civil Procedure, in a prior action.[21] In light of the permissive, non-mandatory language of Rule 14(a), we are of the opinion that in the circumstances of this case, invocation of res judicata to preclude the claim is inappropriate. In February of 1973, when respondents filed their tort claims action against the United States, there was nothing in the wording of Rule 14(a) giving notice that it was incumbent upon them to file a claim against petitioner once she had been impleaded as a third-party defendant by the United States Government. Thus, given the permissive wording of Rule 14(a), and the absence of any decisional law holding that a

---

18. *State v. Baker,* 393 P.2d 893, 897 (Alaska 1964); *compare* Restatement of Judgments §§ 47, 48, 82.

19. *Pennington v. Snow,* 471 P.2d 370, 375–76 (Alaska 1970). In *Pennington,* following Justice Traynor's reasoning in *Bernhard v. Bank of America Nat'l Trust & Sav. Ass'n,* 19 Cal.2d 807, 122 P.2d 892 (1942), we held that ". . . mutuality of estoppel will not as a rule be necessary for the invocation of res judicata or collateral estoppel against a party. But our abandonment of the requirement as a rule does not mean that mutuality will in all cases be unnecessary. . . ."

[I]t remains to be inquired, in each case, whether there were any unusual or exceptional factors in the prior adjudication which would warrant the application of the mutuality requirement." 471 P.2d at 377.

20. 1B Moore's Federal Practice ¶ 0.411[1], at 1252.

21. We note again that this entire analysis is based on the assumption that the federal court would have accepted jurisdiction over a claim asserted under Federal Rule 14 by respondents against petitioner third-party defendant.

bar would arise if the original plaintiff failed to assert a claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff, we find we are in agreement with the conclusions of Professors Moore, Wright, and Miller. More particularly, we hold that respondents were not obligated to take any action in the federal court against the third-party defendant. Thus, respondents' substantive rights have not been lost, for we conclude respondents are not barred from maintaining their previously filed superior court action against petitioner.[22] Our holding reflects our view that absent a clear imperative emanating from the text of Rule 14, it would be manifestly unjust to the respondents for our courts to apply res judicata and thus bar maintenance of the instant superior court action.[23]

 Nor do we think there is merit to petitioner's argument that collateral estop-

pel bars the superior court action. As mentioned previously, in *Pennington v. Snow*, 471 P.2d at 374 (footnote omitted), we stated that " . . . collateral estoppel will act to preclude from litigation any issues actually adjudicated in the previous action involving the same parties or their privies." Respondents were not parties in the litigation that resulted in the jury's determination that, although Mrs. Drickersen was negligent, her negligence was not a proximate cause of the accident. Nor is the record capable of sustaining the conclusion that respondents were in privity with the United States. In *Pennington,* we held that a prerequisite to a finding of privity is that the non-party must have had notice and an opportunity to be heard. Respondents have persuasively argued that as to the third-party claim between the United States and petitioner, as third-party defendant, they did not in fact have the opportunity to be heard on the question of petitioner Mrs. Drickersen's tort liability to the United States.[24]

---

22. Comparison is appropriate with that portion of Rule 13(a) which provides that compulsory counterclaims are required to be stated ". . . except that such a claim need not be so stated if at the time the action was commenced the claim was the subject of another pending action." Under this rule a compulsory counterclaim not pleaded is normally waived but this special exception *indicates a policy of respect for the jurisdiction of other courts and an intention to prevent* "forum shifting judo" by using the rules of procedure to force a party to assert his claim in the forum of his opponent's choice. *See generally* 3 Moore's Federal Practice ¶ 13.14[2].

See *Herrington v. Jones*, 2 F.R.D. 108, 110 (E.D.La.1941), where in a similar procedural context to that presented by the case at bar, the court stated:

If [the original plaintiff] thought that there existed a cause of action in his favor against the [third party defendant], the State Courts were open to him for its assertion; it may be said in passing, that the record herein shows that plaintiff . . . had actually already brought suit against the [third party defendant] in the . . . District Court of the State . . . .

23. *Compare* 1B Moore's Federal Practice ¶ 0.405[11] at 783, ¶ 0.405[12] at 787–91.

We also note that no time prior to the federal trial did petitioner seek removal to the federal court or seek to dismiss the pending superior court action. *Compare Padgett v. Theus*, 484 P.2d 697, 704 (Alaska 1971).

24. While we noted in *Pennington* that the marital relationship conceivably might be a factor in determining whether there is an identity of interest between two spouses in a suit, we there asserted that such a relationship ". . . will not in itself be sufficient to establish privity . . . ." 471 P.2d at 376 n. 10. In the case at bar the marital relationship between the Drickersens *is not a relevant factor in resolving whether* there is an identity of interest because their interests are clearly adverse. A finding that Mrs. Drickersen was contributorily negligent would not act as a bar to Mr. Drickersen's claim against the United States. On the other hand, if Mr. Drickersen had been a party to the third-party claim in federal court, it would be in his interest to prove Mrs. Drickersen negligent. This is precisely what he now seeks to prove.

Although we hold in this case that the bars of res judicata and collateral estoppel are unavailable to petitioner, we think some additional observations are appropriate. Given the salutary goals of judicial economy and finality which form the foundational underpinning of the doctrine of res judicata, we think that ideally, in the factual context of the accident in this case, the goals of res judicata would have been best served by requiring respondents to assert their claims against petitioner third-party defendant. For here the conduct between the same parties was in issue. If Mrs. Dickerson was negligent in her conduct prior to her vehicle's impact with the lead vehicle of the military convoy, she, in all probability, would be held liable to respondents for their injuries.

These latter remarks are made in recognition that it is a somewhat unsatisfactory resolution of the primary issue in this case to hold that the answer turns on the permissive language of Rule 14(a), rather than giving primacy to the well-founded rationales underlying the doctrines of res judicata and collateral estoppel. Since we view the matter of considerable importance, we have determined to submit the question to our Standing Advisory Committee on Rules of Civil Procedure for the purpose of studying possible amendments to Rules 13 and 14 with a view toward facilitating furtherance of the goals of res judicata and collateral estoppel in factual circumstances approximating those presented in this record.

Affirmed.