614 So.2d 906 (1992)
Heather GLASKOX, a Minor, By and Through Her Grandfather, Guardian and Next Friend, Billy H. DENTON
v.
Luther GLASKOX.
Tabatha GLASKOX, a Minor By and Through Her Grandfather, Guardian and Next Friend, Billy H. DENTON
v.
Luther GLASKOX.
Gina Gayle BIGELOW, a Minor, By and Through Her Mother and Next Friend, Carron BIGELOW
v.
Carron BIGELOW.
Nos. 07-CA-59659, 07-CA-59660 and 89-CA-1316.
Supreme Court of Mississippi.
October 29, 1992.
Rehearing Denied April 8, 1993.
*907 John L. Hunter, David O. McCormick, Cumbest Cumbest Hunter & McCormick, Pascagoula, for appellant in No. 07-CA-59659.
Ernest R. Schroeder, C.M. Lanford, H. Benjamin Mullen, Bryan Nelson Schroeder Backstrom Castigliola & Banahan, Raymond L. Brown, Brown & Watt, Pascagoula, for appellee in No. 07-CA-59659.
Charles G. Copeland, Copeland Cook Taylor & Bush, Jackson, for amicus curiae in No. 07-CA-59659.
John L. Hunter, Cumbest Cumbest Hunter & McCormick, Pascagoula, for appellant in No. 07-CA-59660.
Ernest R. Schroeder, Bryan Nelson Schroeder Backstrom Castigliola & Banahan, Pascagoula, for appellee in No. 07-CA-59660.
Dempsey M. Levi, Levi & Denham, Ocean Springs, for appellant in No. 89-CA-1316.
John A. Banahan, Bryan Nelson Schroeder Backstrom Castigliola & Banahan, Pascagoula, for appellee in No. 89-CA-1316.
EN BANC.
BANKS, Justice, for the Court:
This appeal represents the consolidation of three cases wherein we are asked to revisit and overrule our decision in Hewlett v. George, 68 Miss. 703, 9 So. 885 (Miss. 1891),[1] adopting the doctrine of parental immunity for negligent injury to children. We accept the invitation, abolish the doctrine and, consequently reverse the judgments entered in favor of defendants.

I.
Heather Glaskox (Heather), minor, by and through her grandfather, Billy H. Denton, filed a complaint in negligence against Mississippi Export Railroad Company (Railroad) and Luther Glaskox (Glaskox), her father, in the Circuit Court of Jackson County, Mississippi. Heather alleged that on April 11, 1985, at approximately 3:30 p.m., she was injured when a truck being driven by her father, in which she was a passenger, was negligently struck by a train being operated by the railroad. The direct and proximate result of the defendants' negligence was "severe, permanent, painful and disabling personal injuries" to Heather's body. She demanded judgment against the defendants in the amount of $800,000.00.
On July 27, 1988, the defendants filed a "Motion for Protective Order" seeking refuge from having to complete discovery. The defense theory was that such protection should be afforded, pending decision on its "Motion to Dismiss", for failure to state a claim given that the Heather's case against her father was barred by the doctrine of parental immunity.
On the same date, Glaskox, filed a "Separate Answer" to the complaint filed against him. He denied all material allegations of *908 the complaint and claimed that the injuries sustained by Heather were caused by "the negligence of others." He affirmatively alleged that the "sole proximate cause of the accident and injuries complained of by the Plaintiff was the negligence and lack of due care of the Defendant, Mississippi Export Railroad Company... ."
By Order dated August 31, 1988, the court found that there were serious questions regarding the state law "as it might apply to parental immunity from a suit filed by a child in view of the most recent Supreme Court decision of Burns v. Burns, 518 So.2d 1205 (Miss. 1988), which abrogated interspousal immunity in tort suits." It found further that "although serious questions are raised regarding the status of the law in Mississippi, in view of Burns v. Burns, that the doctrine of parental tort immunity for an unemancipated child suing its parent has not been overruled, and the Court is thereby bound by the doctrine of stare decisi [sic] to dismiss this cause of action and hereby grants a dismissal." Finally, the court stayed and terminated all proceedings against the railroad "until a determination is made from the ruling of This Court by a decision from the Supreme Court regarding the issues of parental tort immunity, as the ruling is likely to dispose of the case on its merits and would create judicial economy and efficiency and would not create any prejudice or any undue burden on the parties to await a ruling from the Supreme Court regarding the issues of parental tort immunity." Pursuant to Rule 54(b) of the Mississippi Rules of Civil Procedure, the judgment entered against Glaskox was final and rendered the Court's Order appealable.
From the order of dismissal, Heather filed a Notice of Appeal to the Supreme Court on September 16, 1988.

Tabatha Glaskox
Tabatha Glaskox, (Tabatha), with the aid of her grandfather, filed a complaint in negligence against her father, Luther Glaskox[2]. She alleged that Glaskox was negligent in some, if not all, of the following: (1) failure to keep a reasonable and proper look-out for a train; (2) failure to control his vehicle; (3) driving at an unsafe speed; (4) failure to yield the right-of-way to the train. She demanded $800,000.00 judgment against her father. The record in Tabatha's case was identical to Heather's in all other respects.

Gina Gayle Bigelow
Gina Bigelow (Gina), by and through her mother, Carron Bigelow (Bigelow), filed a complaint in which she alleged that her mother's negligent operation of a car resulted in painful and disabling physical and mental injuries and suffering. She demanded a judgment of $300,000.
Bigelow filed an "Answer" on November 8, 1989, denying all the material allegations of the complaint and alleging, affirmatively, that the complaint failed to state a cause of action as she was immune from suit. On the same date, Bigelow filed a Motion to Dismiss averring that the law in Mississippi on parental immunity did not afford Gina any relief. Gina filed an Answer to Motion to Dismiss on November 16, 1989, denying all the allegations in Bigelow's motion. Additionally, in her Brief in Support of Answer to Motion to Dismiss, Gina argued that parental immunity to a tort suit from an unemancipated minor should be abolished as was the concept of interspousal immunity in Burns v. Burns, 518 So.2d 1205 (Miss. 1988). She contended that the allowance of such suit in no way interferes with or strains the relationship between parent and child; instead it provides a means for compensation to the injured child and insures equal treatment for children.
On August 26, 1988, a hearing was had on the motions to dismiss filed by Glaskox. During the hearing, defense counsel contended that the cases involved questions of law more appropriate for the legislature or Supreme Court and the Burns decision on *909 which plaintiff's relied was a five-four decision with a strong dissent.
Plaintiff's counsel responded that Mississippi got on the wrong track a hundred years ago and without precedent recognized parental immunity from suits brought by unemancipated minors. He stated further that disallowing the suit filed by Heather and Tabatha denies them equal protection and due process of law; additionally, article 3, section 24 of the Mississippi Constitution (1890) which provides for open courts, applies to minors.
The court ruled that pursuant to stare decisis it was obliged to follow the doctrine of parental immunity since such immunity had not been abrogated by the Supreme Court. It held that if the law is to be changed, then it is the decision of the Supreme Court or the legislature and until changed, the court was obliged to follow and apply the doctrine of parental immunity and bar these cases.
On November 17, 1989, the court held a hearing on Bigelow's motion to dismiss suit filed by her daughter, Gina. For the same reasons that it stated in Glaskox v. Glaskox, the court granted the motion.

II
The principle of parental immunity bars an unemancipated minor from suing her parent for injuries caused by the negligence of the parent. Hewlett v. George, 68 Miss. 703, 9 So. 885 (Miss. 1891); Durham v. Durham, 227 Miss. 76, 85 So.2d 807 (1956). Parental immunity did not originate in the English common law; instead, it was a creation of our predecessors. See, Durham, 227 Miss. at 82, 85 So.2d 807. In 1891, in the seminal case of Hewlett v. George, this Court, without relying on any precedent, established a rule of law that would be followed in jurisdictions throughout our land and not be abrogated until some seventy years later[3].
After its introduction in Hewlett, the rule began to spread quite rapidly. The Hewlett Court premised its opinion, and consequently the rule of parental immunity, on the obligations of parents to care for, guide, and control children and the children's duty to obey their parents. Emerging from these reciprocal obligations was the preservation of domestic tranquility.
The peace of society, and of the families composing society, and a sound public policy, designed to sub-serve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent. The state, through its criminal laws will give the minor child protection from parental violence and wrong-doing, and this is all the child can be heard to demand.
Hewlett, 9 So. at 887.
The rule, however, has not been without its critics. Legal writers have almost universally condemned the doctrine, and the trend judicially is toward a steady erosion of the rule by "exception and repudiation." Williams v. Williams, 369 A.2d 669, 673 (Del. 1976). Prosser, Law of Torts, indicates that the doctrine has no foundation in English common law. Courts in Canada and Scotland permit actions by children for personal torts resulting from parental negligence. Id. § 122 (4th Ed. 1971); accord, Harper and James, Law of Torts, Vol. 1, § 8.11 (1956).
Beginning in the early 1960's the rule fell into disfavor in American courts. In 1963, the Wisconsin Supreme Court reversed the process begun by our Court[4]. Stating that suits brought by minors which sounded in property or contract were not prohibited, the Wisconsin Court held that the rule should be abolished except in two situations: (1) where the negligent act involves exercise of parental control or (2) parental authority. Goller v. White, 20 Wis.2d 402, 122 N.W.2d 193 (Wis. 1963).
Other jurisdictions followed suit and began limiting or abolishing the doctrine nearly as fast as it was adopted. Today most jurisdictions have limited the application *910 of the doctrine, especially in the area of personal injury actions which presently concerns the Court[5]. The great majority of states recognize exceptions to the parent-child tort immunity doctrine. More than half of the states have taken the position that a parent may be liable to her child for injuries caused by the parent's negligence.[6]

III
Plaintiffs rely upon this Court's decision in Burns v. Burns 518 So.2d 1205 (Miss. *911 1988), which abrogated spousal immunity. They maintain that the eradication of spousal immunity should lead this Court to abolish, or at least limit, parental immunity in the area of tort suits premised on negligence.
Defendants respond that Burns, inasmuch as it concerns spousal immunity, has no application to the area of parental immunity. Moreover, Burns dealt with an intentional tort, not negligence as the instant case. They also contend that the decision in Burns was premised on the constitution and statutes which gave married women the same and full legal rights of unmarried women. See Burns, 518 So.2d at 1206-09.
We find Burns, as well as the decisions of jurisdictions abrogating the doctrine of parental immunity, persuasive and join the majority of other jurisdictions which abolish the principle of parental immunity where a minor is injured as a result of her parents' negligent operation of a motor vehicle. There is no justification for barring children from enjoying the same rights of legal redress for wrongs done to them that others enjoy. Lee v. Comer, 159 W. Va. 585, 224 S.E.2d 721, 723 (1976). Additionally, to "hold that a child's pains must be endured for the peace and welfare of the family is something of a mockery." Id. at 723. The authorities which favor eradication state the proper approach given modern conditions and conceptions about what is good public policy. Transamerica Ins. Co. v. Royle, 202 Mont. 173, 656 P.2d 820, 824 (1983).
Defendants advance numerous arguments in support of their position that the proscription of children's tort suits against their parents reflects sound public policy. They contend that the maintenance of such suits is wholly inconsistent with the parent-child relationship.
The defendants' arguments are without merit. First, it must be remembered that the general rule provides that where an injury results from negligence, liability follows. "For negligent or tortious conduct, liability is the rule. Immunity is the exception." President and Directors of Georgetown College v. Hughes, 130 F.2d 810 (D.C.App. 1942). The doctrine also loses force when it is recalled that both English and American common-law permit an unemancipated minor to maintain property actions against a parent. As indicated by one court, some of the most bitter disputes arise over property. Lee, 224 S.E.2d at 723. Despite this fact, no jurisdictions prohibit such suits by minors. Further, where a child sues a parent in contract, the family unit is not any less close, and the child less dependent on the parent. No sound justification appears for the fact that the law protects a minor's contract or property rights, but offers no redress to the child for injury to his person. Streenz v. Streenz, 106 Ariz. 86, 471 P.2d 282 (1970).
Family tranquility which serves as a basis for the public policy on which parental immunity is founded is not a proper justification to deprive a minor child of the right to sue for injuries to his person. Moreover, domestic peace and harmony may be more threatened by denying the cause of action than by permitting one, especially where there is insurance.
The cost of making the injured [child] whole would necessarily come out of the family coffers, yet a tortfeasor [parent] surely anticipates that he will be covered in the event that his negligence causes his [child] injuries. This unexpected drain on the family's financial resources could likely lead to an interference with the normal family life. And it is doubtful that this void in insurance coverage would comport with the reasonable expectations of the insured that this Court has so often sought to protect.
Smith v. Kauffman, 183 S.E.2d 190, 194 (Va. 1971)
In the area of automobile accident cases, the almost universal existence of liability insurance cannot be ignored. Where liability insurance exists, the domestic tranquility argument is no longer valid; in fact it is quite hollow, for in reality the sought after litigation is between the child and the parent's insurance carrier; not the child the parent. Schleier v. Alter, 159 Ariz. 397, 767 P.2d 1187, 1189 (1989); Lee, 224 S.E.2d *912 at 723 citing numerous decisions in support. Quite to the contrary of the fears of the defendants, where insurance is available to compensate the child for injuries, the possibility of disruption of the family unit is negligible. Schleier, 767 P.2d at 1189[7].
It is also worthy of mention that when an action is brought against a parent, frequently it will be brought at the instance, or with the approval, of the parent with an eye toward recovery from the parent's already purchased liability insurance. When there is no coverage it is unlikely that suit will be brought against the parent. In rare cases where the action is truly adversarial, judicial formulation of an obstacle to the suit cannot contribute to family harmony or restore the proper relations among the members. Sorensen v. Sorensen, 369 Mass. 350, 339 N.E.2d 907 (1975); Schleier, 767 P.2d at 1189; Lee, 224 S.E.2d at 724; Streenz, 471 P.2d at 284.
Finally, the immunity rule has not been applied to property rights, contract rights, an emancipated child, wrongful death actions, suits between brothers and sisters, a stepfather, an adoptive parent, or a grandparent, to cases where the child is injured in the course of a business rather than a personal activity, and in suits involving willful, wanton, intentional or criminal conduct. If harmony and unity in the family is the public policy protecting the rule, it would seem to be present in these areas. * * *. From these observations, it is easy to conclude that the justification for the rule based on harmony, cooperation and family affection and its preservation is an excuse rather than a solid foundation for the rule.
Stallman v. Youngquist, 129 Ill. App.3d 859, 863, 85 Ill.Dec. 32, 35, 473 N.E.2d 400, 403 (1984).
The most persuasive argument against abrogation of the parent-child immunity doctrine is the possibility of fraud and collusion. While a possibility, this factor does not justify denial of otherwise meritorious claims. As stated by the Montana Supreme Court in Transamerica, 656 P.2d at 820 quoting the Supreme Court of Kansas in Nocktonick v. Nocktonick, 227 Kan. 758, 611 P.2d 135 (1980),
"[t]he possibility of collusion exists to a certain extent in any case. Every day we depend on juries and trial judges to sift evidence in order to determine the facts and arrive at proper verdicts. Experience has shown that the courts are quite adequate for this task. In litigation between parent and child, judges and juries would naturally be mindful of the relationship and would be even more on the alert for improper conduct." 611 P.2d at 142
Accord, Lee, 224 S.E.2d at 725 (through prompt and efficient investigation by the insurance company and active participation by counsel representing both parties, juries and trial courts have constantly performed the function of distinguishing the frivolous from the meritorious). Furthermore, the interest of the child in freedom from personal injury caused by tortious conduct of others is sufficient to outweigh danger of fraud or collusion.

CONCLUSION
We hold that the judicially created doctrine of parental immunity has outlived its purpose and adopt the majority view abrogating the principle as it applies to the negligent operation of a motor vehicle. We recognize a legislative prerogative to declare a policy this area and fashion such legislation implementing that policy as it sees fit consistent with constitutional limitations. Accordingly, we reverse the judgments entered below and remand these cases to the trial court for further proceedings.
REVERSED AND REMANDED.
PRATHER, SULLIVAN and PITTMAN, JJ., concur.
McRAE, J., concurs in part and dissents in part with separate written opinion.
*913 DAN M. LEE, P.J., dissents with separate written opinion joined by ROY NOBLE LEE, C.J., and HAWKINS, P.J.
ROBERTS, J., not participating according to supreme court internal rules.
DAN M. LEE, Presiding Justice, dissenting:
While the welfare of the children of this State is unquestionably one of the most serious problems facing citizens of Mississippi, the ill-advised decision of the majority today is not part of the solution. In fact, time will show that this decision is not even remotely in the best interest of the children of this state.
The majority relies on the holding of this Court in Burns v. Burns, 518 So.2d 1205 (Miss. 1988), and what it perceives to be the current trend in other jurisdictions to toss aside a venerable and well reasoned rule of law. As this opinion will demonstrate, the reliance on Burns is misplaced and the sounder public policy arguments still favor retention of the doctrine of parental tort immunity.

I. THE REASONING BEHIND THE BURNS DECISION DOES NOT TRANSFER TO THE ISSUE OF PARENTAL TORT IMMUNITY
In point of fact, this Court in Burns chose a case where the facts were overwhelmingly in favor of finding a limited exception to spousal immunity and used it as a vehicle for nominally abolishing the entire doctrine. At any rate, Burns is distinguishable from the case at bar for at least three reasons.
First, the alleged tort in Burns was intentional. There was absolutely no question as to whether the holding might discourage socially valuable conduct. Obviously no good ever comes from assault or battery. As will be developed more fully below, however, destroying parental immunity will inhibit parental conduct that is vitally important to our social well-being. This difference is a major obstacle to overcome in seeking to transfer the logic of Burns to the current case.
The second distinction between Burns and the case now before this Court is the nature of the relationship between and among the relevant parties. As for a husband and wife, both may be presumed to be capable of determining what actions and courses of conduct are in their own best interests and of acting in accordance with such determinations. Therefore, there is no social utility in allowing one to control the free will of the other. However, the relationship between parent and child is radically different. Not only are children generally not mature and experienced enough to determine what conduct would be in their own best interests, they are also under legal disabilities that prevent them from acting in furtherance of these interests. For this reason, family members and society as a whole greatly benefit when parents are allowed the freedom to guide the development and the day to day activities of their children. Indeed, this guidance is the cornerstone of the ideal of the American family. The level of parental guidance necessary to rear responsible, productive members of society simply cannot be attained in a situation where parents must constantly weigh the benefit of helping a child to understand an important lesson against the looming specter of being hauled into court by an opportunistic attorney for the child.
This Damoclean Sword hanging over parents is particularly intolerable given the current crisis in America caused by widespread drug abuse among minors. Experience has shown that no family is immune to the havoc created by drug addiction. This scourge frequently must be dealt with through strong parental action if children are to be saved from their self-destructive tendencies. Yet the majority clears the way for introducing the additional strain of a lawsuit into this already stressful situation. Many families will no doubt collapse under the added weight of threatened or actual tort suits brought by rebellious children.
From the standpoint of societal benefits, then, it is undoubtedly better to leave some valid injuries unredressed than to subject all parents to the constant fear of retaliation. This is the classic verbal formulation *914 of the requisites for a grant of tort immunity. See e.g., Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir.1949). It also answers the majority's statement of the general rule that liability follows negligence.
The third major distinction between Burns and the case currently before this Court is the difference in the social and legal status of women and children. As is well documented by Justice Prather in the majority opinion of Burns, the legal status of women has changed greatly since the establishment of the now repudiated rule of spousal immunity. See Burns, 518 So.2d at 1209. To quote from Burns, "This time honored rule [spousal immunity] no longer fits the reasoning and rationale of today's mores as evidenced by the abrogation of the rule in whole or in part, in 44 of the states." Burns v. Burns, 518 So.2d 1205, 1211 (Miss. 1988). This is no doubt true with respect to the traditional justifications based on the unity of husband and wife. Whether it is true with respect to justifications based on marital harmony and collusive suits remains to be seen.
Suffice it to say, by removing a vestige of coverture, this Court did take a natural and arguably logical step forward in the march towards equality for women. The crucial point for the current case, however, is that there has been no similar legal trend toward removing the disabilities of minors. Thus, the changing social "mores" related to the legal status of women that were important in Burns have no bearing on the issue of parental immunity. In short we now recognize that the disabilities imposed on married women at common law were based on faulty premises. The same cannot be said for the disabilities currently imposed on minors.

II. SOUND PUBLIC POLICY FAVORS RETAINING PARENTAL TORT IMMUNITY
The majority was persuaded by Burns and the current trend in other jurisdictions. However, the foregoing discussion amply demonstrates that Burns is distinguishable. As for the decisions in other jurisdictions, they are neither controlling nor persuasive. They simply represent the policy judgments of the courts in their respective jurisdictions. As such, they are based on prevalent environmental factors that may or may not be present in Mississippi (e.g., mandatory liability insurance). Clearly this question is one of public policy and the more logical policy arguments favor retention of the doctrine. They are discussed below.
The most persuasive argument against abrogating the doctrine of parental immunity is the devastating effect it would have on family relationships. First and foremost, the presence of potential tort liability would inhibit the nurturing and discipline necessary for a sound family environment. Any parent knows the multitude of services that are provided to children to foster their development and to provide them with educational and recreational opportunities. Not the least of these is the seemingly constant provision of transportation. A cursory list of other services would include cooking, administering first aid and routine medical care, counseling, teaching recreational skills (swimming, sports, etc.), and others too numerous to mention. All of these are discretionary and would be affected by abrogation of the parental tort immunity. This Court should not place a parent in the quandary of having to choose between providing something desirable for the development or recreation of his or her child or cautiously avoiding potential tort liability.
Apart from these services, responsible parents also face decisions on how best to advise and guide their children. As discussed above, society as a whole and children as individuals have a huge vested interest in parental guidance. The courts and legislatures have recognized this vital role and this Court should not create disincentives for parents to act in this capacity. Society simply cannot afford for parents to abdicate this function out of caution, fear of a lawsuit, or for any other reason.
Secondly, abrogation of the parental tort immunity will adversely affect the harmony of the family. To deny that intrafamily tort suits will promote family discord is ludicrous. While it is true that torts like *915 the assault and battery alleged in the Burns case are more harmful to relationships than lawsuits to redress the concomitant injuries, this is not always true. For it is not only the prosecution of lawsuits that creates discord. The threatened suit and the resumption of family life after the suit (regardless of the outcome) also strain the familial bonds.
Children are often contentious by nature and our litigious culture has a tendency to make all members keenly aware of any and all legal recourse available. Is it so farfetched to envision advertisements for toys and cereals on Saturday mornings being replaced by commercials that begin, "If you or someone you know has been injured as a result of parental negligence ..."? Parents attempting to rear their children responsibly do not deserve the additional obstacle to family harmony created by numbers like "1-800-SUE-MAMA." To suggest that abrogation of the parental tort immunity will not adversely affect families is simply wrong.
In addition to the primary effect of contributing to family strife, abrogation will have other harmful consequences. First, it will lead to a tremendous increase in collusive suits. Our legal system functions properly only when the interest of the parties are antagonistic. The majority seemingly recognizes that most suits will be collusive. ("In rare cases where the action is truly adversarial, judicial formulation of an obstacle to the suit cannot contribute family harmony or restore the proper relations among the members." (emphasis added)). However, the majority relies on an already overburdened system to cope with this problem. Jurors can only decide a case based on their experiences and the evidence presented to them. They obviously cannot learn of facts that are suppressed or fabricated by agreement of the supposed adversaries.
In most collusive suits it is an insurer that will be placed in the unenviable position of refuting the evidence against the parent. This must be accomplished with no knowledge of the facts and little hope of cooperation from the insured. Ironically, the costs insurers incur as a result of collusive suits will be passed along to all families. This will create more problems for parents on budgets and less money to meet the needs of children. A final point on insurance is simply that insurers cannot be forced to underwrite unprofitable risks. Premiums will be raised to cover the increased risk of collusive suits, or policies will either exclude injuries to family members or become unavailable altogether. All of these prospects directly undermine the arguments advanced by the majority.
Even in suits where parents vigorously present their case, jurors will be in the difficult position of determining what is objectively reasonable conduct. The diversity of opinion on child-rearing, the vast differences in parental experience, and the individualized needs of different children will all work to make this task virtually impossible. Thus, the threat of tort liability will both discourage socially valuable behavior (parental nurturing and guidance) and will promote harmful behavior (collusive suits). Any decision with these consequences would not be a service to Mississippians.
As shown in the preceding discussion, the Burns reasoning is distinguishable from the current case and the sounder public policy arguments weigh in favor of retaining the parental immunity. With that said, all that remains is to mention some of the arguments in favor of abrogation that are incorporated into the majority opinion. First the majority argues that no sound justification exists for the distinction between tort suits and suits based on contract or property law. What must be remembered is that the rule of parental immunity is based on policy considerations and is, therefore, a question of degree. Contract and property causes of action are not only less frequent between family members than tort suits would be should the immunity be destroyed, they are also much less likely to arise as a result of an exercise of parental discretion. Therefore, the normal concerns for effective guidance are not present. Likewise there is a greatly reduced possibility of collusion where *916 the outcome of the suit cannot increase the assets of the family unit.
Secondly the majority states that, "to hold that a child's pains must be endured for the peace and welfare of the family is something of a mockery." (citing Lee v. Comer, 159 W. Va. 585, 224 S.E.2d 721, 723 (1976). This implies that a child injured by the negligence of a parent is adrift in our current system with no rights at all. With all due respect to the majority, tort law cannot erase physical injuries or soothe human suffering. It can only insure that injured parties are compensated. As parents already have the legal responsibility of providing care for their children, the child is protected and not "mocked" by the current system. A policy of immunity in no way detracts from the seriousness of the issue of parental neglect or other forms of abuse. The proper remedy for these injuries, however, is eternal vigilance on the part of individuals and government agencies and vigorous enforcement of criminal statutes.
A venerable and well reasoned rule of law, supported by precedent and strong family policy arguments, should not be abrogated simply because its popularity is said to have waned in some jurisdictions. This is particularly true when the decline in popularity is due to pressure by a few members of the legal community for the sole purpose of generating more legal fees and at the expense of great harm to traditional family values.

CONCLUSION
Being firmly convinced that the majority's decision will further endanger family values like parental nurturing and guidance, I would acknowledge the wisdom of the line of cases beginning with Hewlett v. George, 68 Miss. 703, 9 So. 895 (1891), and affirm the judgment of the lower court.
ROY NOBLE LEE, C.J., and HAWKINS, P.J., join this dissent.
ROBERTS, J., not participating per Supreme Court Internal Rules.
McRAE, Justice, concurring in part and dissenting in part:
I concur with the majority's decision to abrogate parental immunity consistent with our opinion in Burns v. Burns, 518 So.2d 1205 (Miss. 1988), wherein we abolished interspousal immunity.
However, I disagree with the majority's conclusion that the abrogation of inter-family immunity or parental immunity should be limited to automobile accident cases. In Burns, the abolition of interspousal immunity was not so limited. Likewise, our rejection of parental immunity should not be limited, but given the same reading as Burns. As we stated in that case, "to preserve and leave intact the interspousal immunity doctrine ... repudiates the constitutional guarantee of equal protection of the laws. United States Constitution, Amendment XIV." 518 So.2d at 1211. It is my opinion that Miss. Const., art. III, § 24, would also be applicable.
Why is the majority limiting abrogation of parental immunity to automobile accidents? We applied the same reasoning for the abolition of interspousal immunity as we did for abrogation of parental immunity. What is the difference? We should not limit our decision to injuries sustained in automobile accidents, but totally abrogate the doctrine as we did in Burns.
NOTES
[1] Although Hewlett is cited often as the case which laid the foundation for the modern doctrine of parental immunity for injuries to an unemancipated child as a result of the parent's negligence, the facts of that decision charged the wilful wrong of confinement of a child in an insane asylum, by her mother. The Court held that an action for false imprisonment did not lie against the parent.
[2] Tabatha's complaint differed from Heather's only with respect to the opposing party  Tabatha only sued her father; she did not sue the railroad. In all other respects, the records were identical.
[3] Goller v. White, 20 Wis.2d 402, 122 N.W.2d 193 (1963).
[4] See supra note 2.
[5] Drickersen v. Drickersen, 546 P.2d 162 (Alak. 1976); Schleier v. Alter, 159 Ariz. 397, 767 P.2d 1187 (1989); Streenz v. Streenz, 106 Ariz. 86, 471 P.2d 282 (1970); Gibson v. Gibson, 3 Cal.3d 914, 92 Cal. Rptr. 288, 479 P.2d 648 (1971) (abolishing immunity altogether); Schlessinger v. Schlessinger, 796 P.2d 1385 (Colo. 1990) (not in automobile injury cases); Ooms v. Ooms, 164 Conn. 48, 316 A.2d 783 (Conn. 1972) (statutory abrogation of the doctrine in actions for negligence in the operation of a motor vehicle); Williams v. Williams, 369 A.2d 669, 673 (Del. 1976) (abolished rule in area of liability for negligent operation of automobile); Rousey v. Rousey, 528 A.2d 416 (D.C.App. 1987) (child not barred from suing parent for negligence, regardless of insurance); Krouse v. Krouse, 489 So.2d 106 (Fla. 1986) (statutory abrogation of doctrine in automobile negligence cases, Fla. Stat. Ann. § 768.21(5), 6(b)); Petersen v. Honolulu, 51 Haw. 484, 462 P.2d 1007 (1969) (parent-child negligence suits will be permitted regardless of presence or absence of insurance coverage; immunity doctrine will not be adopted by the Hawaii Supreme Court); Farmers Ins. Group v. Reed, 109 Idaho 849, 712 P.2d 550 (1985) (intra-family immunity actions in automobile negligence cases will be maintained only up to limits in the automobile insurance policy; Idaho has a compulsory insurance law); Stallman v. Youngquist, 152 Ill. App.3d 683, 105 Ill.Dec. 635, 504 N.E.2d 920 (1987) (rule limited to acts arising out of the family relationship and directly connected with family purposes and objectives); Turner v. Turner, 304 N.W.2d 786 (Iowa 1981) (abolished parental immunity); Nocktonick v. Nocktonick, 227 Kan. 758, 611 P.2d 135 (1980) (unemancipated minor may recover damages in an action brought against parent for personal injuries caused by the negligence of the parent in the operation of a motor vehicle); Rigdon v. Rigdon, 465 S.W.2d 921 (Ken. 1970) (abrogated doctrine except in area of parental control or parental authority); Flagg v. Flagg, 458 A.2d 748 (Me. 1983) (child permitted to sue parent for injuries caused by negligence of parent in operating a motor vehicle); Stamboulis v. Stamboulis, 401 Mass. 762, 519 N.E.2d 1299 (1988) (quoting Sorensen v. Sorensen, 339 N.E.2d 907, which abrogated immunity in motor vehicle tort cases only if insurance coverage was involved); Sweeney v. Sweeney, 402 Mich. 234, 262 N.W.2d 625 (1978) (minor may maintain lawsuit for injuries sustained as a result of ordinary negligence); Silesky v. Kelman, 281 Minn. 431, 161 N.W.2d 631 (1968) (abrogated the parental immunity rule in negligence cases except in certain situations; child permitted to sue for injuries resulting from auto accidents); Transamerica Ins. Co. v. Royle, 202 Mont. 173, 656 P.2d 820 (1983) (in 1979 legislature mandated liability insurance; court held that a parent is not immune from suit brought by his child under the age of emancipation in cases involving parental negligence in the operation of a motor vehicle); Rupert v. Stienne, 90 Nev. 397, 528 P.2d 1013 (1974) (the right of a parent to sue a child in tort is without restriction or limitation); Briere v. Briere, 107 N.H. 432, 224 A.2d 588 (1966) (minor could maintain action against parent for injuries sustained in automobile accident); Foldi v. Jeffries, 93 N.J. 533, 461 A.2d 1145 (1983) (unemancipated child may sue parent for injury resulting from negligent operation of a motor vehicle); Gelbman v. Gelbman, 23 N.Y.2d 434, 297 N.Y.S.2d 529, 245 N.E.2d 192 (1969); Carver v. Carver, 310 N.C. 669, 314 S.E.2d 739 (N.C. 1984) (statute abrogated doctrine of parental immunity in personal injury and property damage cases arising out of parent's operation of motor vehicle) accord, Lee v. Mowett Sales Co., 316 N.C. 489, 342 S.E.2d 882 (1986) (doctrine will continue to be applied as it exists); Nuelle v. Wells, 154 N.W.2d 364 (N.D. 1967); (Clark v. Snapper Power Equipment, Inc., 21 Ohio St.3d 58, 488 N.E.2d 138 (1986) (minor child's complaint in tort may not be dismissed where the dismissal is premised on a theory that the doctrine of parental immunity a complete bar to the action); Winn v. Gilroy, 296 Or. 718, 681 P.2d 776 (1984) (adopted Restatement (Second) of Torts § 895G approach and abolishes immunity except in instances where the act is not tortious or is privileged); Falco v. Pados, 444 Pa. 372, 282 A.2d 351 (1971); Elam v. Elam, 275 S.C. 132, 268 S.E.2d 109 (1980) (abolished parental immunity doctrine); Jilani v. Jilani, 767 S.W.2d 671 (Tex. 1988) (eradicated rule except in instances of reasonable exercise of parental authority or exercise of parental discretion); Smith v. Kauffman, 212 Va. 181, 183 S.E.2d 190 (1971) (abolish rule of parental immunity in motor vehicle accident cases); Lee v. Comer, 159 W. Va. 585, 224 S.E.2d 721 (1976) (unemancipated minor may maintain action against parent for personal injuries sustained in an automobile accident caused by the negligence of said parent); Jenkins v. Snohomish County Public Utility, 105 Wash.2d 99, 713 P.2d 79 (1986) quoting Hoffman v. Tracy, 67 Wash.2d 31, 406 P.2d 323 (1965) (no parental immunity when a child is injured as a result of negligent driving by a parent).
[6] See supra note 4.
[7] Many cases discussing the importance of liability insurance, state either explicitly or by necessary inference that suits brought by minors in tort against their parents will be allowed "regardless of the presence or absence of insurance coverage." Lee, 224 S.E.2d at 724.